# Bunting Bristol Transfer, Inc., Appellant, v. Pennsylvania Public Utility Commission.

Argued April 20, 1965. Before Bell, C. J., Musmanno, Jones, Cohen, Eagen, O'Brien and Roberts, JJ.

*William E. Zeiter*, with him *Arthur R. Littleton*, and *Morgan, Lewis & Bockius*, for appellants.

*Robert M. Harris,* Assistant Counsel, with him *Thomas M. Kerrigan,* Assistant Counsel, and *Joseph C. Bruno,* Chief Counsel, for Pennsylvania Public Utility Commission, appellee.

*S. H. Copelin,* for intervening appellee.

OPINION BY MR. JUSTICE JONES, May 27, 1965:

James C. Wetherill, t/d/b/a Hatboro Delivery Service (Wetherill), prior to 1962, was certificated as a motor carrier by the Pennsylvania Public Utility Commission (Commission), to (a) transport parcels and packages, as a Class D carrier, from retail stores in Hatboro Borough, Montgomery County, and within 10 miles of the usually traveled highways of the limits of that borough, excluding the City and County of Philadelphia and (b) to transport, as a Class B carrier, property between points in Hatboro Borough and to transport property, as a Class D carrier, from points in Hatboro Borough to points within 5 miles of the usually traveled highways of the limits of that Borough and vice versa.

On February 26, 1962, Wetherill applied to the Commission for an amendment to his certificated rights to permit him to transport as a common carrier "Property, excluding household goods in use, between points within a 5 mile radius of the Borough of Hatboro, and from said points to points in Philadelphia and vice versa."[1] On March 1, 1962, Wetherill amended his application to permit him to transport "property excluding household goods in use, between points in the Borough of Hatboro, . . ., and within five miles of [Hatboro Borough], and from points in [Hatboro Borough] and said territory to points in Philadelphia and vice versa." At the initial hearing, Wetherill's

---

[1] As stated in the application.

counsel again amended the application stating: ". . . I want to amend the application so that it is limited to *emergency service* constituting pick-ups and delivery in less than twenty-four hours." (Emphasis supplied)

After hearings, the Commission, on September 10, 1962, entered a so-called "short form" order permitting Wetherill's common carrier certificate to be amended to include the right: "To transport, as a Class D carrier, limited to emergency service constituting pick-ups and deliveries in less than twenty-four (24) hours, property (excluding household goods in use and commodities in bulk in tank vehicles or in hopper type vehicles) between points in [Hatboro Borough], and within five (5) miles of the limits of said borough and from points in the said borough and within five (5) miles of the limits thereof to points in the City and County of Philadelphia, and vice versa." Seven protesting certificated motor carriers (appellants) appealed to the Superior Court which, upon the Commission's motion, remanded the record to the Commission to make specific findings of fact.

Thereafter, the Commission entered a so-called "long form" order affirming its previous order. The basis for this order, as stated by the Commission, was threefold: (1) the existence of a need for the emergency transportation service granted; (2) the presently certificated carriers have not met this need; (3) whatever business Wetherill obtains will not adversely affect the activities of the presently certificated carriers. It is highly significant to note that in assigning its reasons for its order and in discussing the evidence the Commission does not discuss the fact that the service generally rendered up until the date of the initial hearing by Wetherill was *illegally* rendered nor did the Commission make any finding that the service rendered by Wetherill in violation of his certificated rights was either due to a misunderstanding on

Wetherill's part or was rendered in good faith. Upon return to the Superior Court of the record, that Court, being evenly divided, affirmed the Commission's order. We granted allocatur.

Appellants present two issues upon this appeal: (1) where an applicant for certificated motor carrier rights has been operating *illegally* for a number of years, was well aware of his certificated rights, had been admonished by the Commission concerning at least one violation, continued to operate illegally after making an affidavit on the application to the contrary, and terminated his illegal operations only after a complaint was made to the Commission, may the Commission grant a certificate validating such illegal operation based solely upon the testimony of applicant and shippers who have been utilizing such illegal operations? (2) under the instant circumstances, did the Commission abuse its discretion in defining "emergency" service as service constituting deliveries effected within 24 hours of the pick-up?

The testimony upon which both the Commission and Wetherill relied to show a need for the type of service which Wetherill proposed to furnish came from Wetherill and the representatives of twelve shippers who had availed themselves, prior to the date of the initial hearing, of such service rendered by Wetherill. That such services were beyond the certificated rights of Wetherill neither is nor can be denied and upon such evidence of *illegal operations* the Commission based its findings.

In *Lancaster Transportation Co. v. Pa. P. U. C.*, 181 Pa. Superior Ct. 129, 138, 124 A. 2d 380, President Judge RHODES stated: "The mere fact of prior operation without commission approval is not per se equivalent to an offense which will prohibit absolutely the acquisition of proper authority when the application is subsequently made. The distinction between those

violations which are prohibitive and those which will be accepted as competent evidence is, to a large degree, dependent upon the existence of good faith. If the violation is the result of a bona fide misunderstanding of the service authorized by the commission, there is no substantial basis, either legally or morally, to object to its use in a certification proceeding. [citing authorities]. On the other hand, where the violation is one resulting from a deliberate disregard of the certificate limitations or the law, then, of course, the wrongdoer should not profit from his own deliberate wrong."

In the case at bar, the evidence upon which the Commission based its findings arose from service rendered patently in violation of Wetherill's certificated rights and was clearly an illegal operation. Were such services rendered under a *bona fide* misunderstanding of his certificated rights by Wetherill? We think not. Wetherill admitted that the nature, scope and extent of his rights had been explained to him on the two occasions when he had been granted rights. About one year prior to the initial hearing, Wetherill, through his counsel, had been warned of his illegal service to one shipper. When Wetherill filed his application for an amendment to his certificated rights he swore that he would not engage in the type of transportation for which the Commission's approval was then sought until such approval was given and yet, on the date of the initial hearing five weeks later, he admitted that on that date he was engaged in an illegal operation.

Our review of this record clearly indicates (a) that *all* of the evidence as to the need for the requested service came from shippers who were receiving this illegal service over a period of years and from Wetherill who was rendering such illegal service, (b) that Wetherill was fully conversant with the extent and scope of his certificated rights and (c) that his per-

formance of such illegal service, even up to the date of hearings, indicated bad faith on Wetherill's part and a complete indifference to compliance with the extent of the rights granted him by the Commission. Under such circumstances, the language of the Superior Court in *Lancaster*, supra, is peculiarly applicable: ". . . the violation is one resulting from a deliberate disregard of the certificate limitations or the law, [and], of course, [Wetherill] should not profit from his own deliberate wrong." Under the record in this case, the failure of the Commission to make *any* finding on the question of the good faith of Wetherill is beyond comprehension.

In *D. F. Bast, Inc. v. Pa. P. U. C.*, 397 Pa. 246, 251, 154 A. 2d 505, we held that evidence of illegal operations deliberately rendered on the part of an applicant for a certificate from the Commission and related shipper testimony is "improper for consideration by the Commission" and "must be excluded". Moreover, we stated in *Bast,* 397 Pa. at 250, 251: "The evidence which [the applicant] offered in support of its application for an extension of its certificated rights was in large measure premised upon the almost exclusive use by the shipper-witnesses . . . of [the applicant's services] . . . . There can be no doubt . . . that such service was rendered in violation of [the applicant's] certificated rights. The record further discloses that, for the most part, these shippers had not investigated the facilities of other carriers because their shipping requirements were fulfilled, apparently at lower rates, by the illegal service rendered by [the applicant]." Such statement is particularly apposite in the case at bar, except that *all* of the evidence offered by Wetherill in support of his application related to illegal service rendered by him. Under one guise or another, the standard enunciated in *Bast* must not be departed from. In considering applications of

the character herein presented the Commission must not only make a finding whether the violation of a carrier's certificated rights was based upon a *bona fide* misunderstanding but such finding must be based upon clear and convincing evidence. In *Bast,* the carrier admitted deliberate disregard of his certificated rights. However, such an admission is not a requisite to a finding of bad faith since a deliberate disregard of a carrier's certificated rights may well be found from the carrier's actions and conduct.

Without the evidence of Wetherill and his shipper-witnesses involving his illegal operations, there is no basis on this record upon which the Commission could find a need for the type of proposed service or the necessity for the grant of the certificated rights which Wetherill sought. The exclusion of such evidence requires a reversal both of the order of the Commission and the order of the Superior Court which affirmed it.

In view of the conclusions reached, we need not consider appellants' other contentions.

Order of the Superior Court reversed.

---

CONCURRING OPINION BY MR. JUSTICE COHEN:

I concur in the opinion of the Court. Two points however deserve clarification.

The first point has to do with the problem of burden of proof. The burden of proving good faith is on the applicant. He can acquit the burden only through the submission of proper evidence which is both clear and convincing. The protesting carriers do not have the burden of proving the applicant's lack of good faith although they have the right to present evidence on the point. It will be presumed that if the applicant violated his certificate his violation was in bad faith. The presumption can be overcome only by the appli-

cant's submission of proper evidence which clearly and convincingly demonstrates his good faith.

The second point has to do with the proof of good faith. The applicant does not prove his good faith by merely showing that his violation was not deliberate. He must go farther. He must demonstrate by evidence that is both clear and convincing not only that his violation was nondeliberate but also that he did not know or suspect and had no means to know that he was exceeding the rights conferred upon him by his certificate.

In the proof of good faith we must recognize that certificates of public convenience are issued as a result of an application to the Public Utility Commission, usually by sophisticated business men represented by counsel who request specific privileges. If the certificates are acquired by transfer of an existing certificate, the acquisition is made only after investigation and analysis of the acquired existing rights. Thus, the holders of certificates are experienced and knowledgeable. I recognize that in some technical certificates which describe areas and routes the exact privilege granted is difficult to determine; then a clarification of the rights granted is demanded rather than action which results in violation of the certificated rights and illegal operation.