## Johnstown-Pittsburgh Express, Inc. *v.* Public Utility Commission and W. C. McQuaide, Inc., Intervenor.

Argued April 4, 1972, before President Judge Bow-man and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*Arthur J. Diskin,* for appellant.

*William A. Goichman,* Assistant Counsel, with him *Edward Munce,* Acting Counsel, *Paul Silverstein,* Assistant Counsel, and *Philip P. Kalodner,* Counsel, for appellee.

*Christian V. Graf,* for intervenor.

Opinion by Judge Rogers, June 1, 1972:

Johnstown-Pittsburgh Express, Inc. (J-PX) has appealed from two orders of the PUC granting enlarged authority to transport property by motor vehicle to a competitor, W. C. McQuaide, Inc. (McQuaide). Twenty-two days of hearings produced more than 2500 pages of testimony. The appellant was excused by us from printing any part of the record on its representation that its only concern was with service to and from Alle-

gheny County and that its brief would make pertinent reference to the parts of the record dealing with that subject. Unhappily, because the parties have directed our attention to more than 500 places in the ten folders comprising the evidence files, the time spared counsel in the reproduction of the pertinent evidence has been expended by the court in grappling with this monumental record.

The appellant, J-PX, is certificated to transport property from Allegheny County to the City of Johnstown and within a radius of five miles of the latter, and vice versa. The intervening appellee, McQuaide, was, prior to the orders here appealed from, authorized to transport property from points in the Borough of Martinsburg, Blair County, and within an airline distance of thirty miles from Martinsburg to points within an airline distance of one hundred and eighty miles of the limits of that Borough and vice versa. McQuaide purchased its rights from another carrier. Both McQuaide and its predecessor served shippers in all of the City of Johnstown, the subject of the order here appealed to Number 57 Transfer Docket 1971, and in certain Johnstown suburban communities, the subject of the order here appealed to Number 58 Transfer Docket 1971. They did so because they believed that they were entitled to do so under their certificate. In March 1963, seventeen motor carriers filed a complaint with the PUC that McQuaide was performing transportation beyond the territorial limits of its certificate. This confronted the PUC with the necessity of deciding the meaning of McQuaide's authority to render service "within an airline distance of thirty miles from Martinsburg." McQuaide had taken airline distance in miles to mean nautical miles consisting of 6076.1 feet because this is the standard used in air travel. The complainants contended that the authorization was of statute miles, consisting of 5280 feet. If nautical miles

were meant, all of McQuaide's operations were proper. On the other hand, much of Johnstown and its suburbs served by McQuaide were beyond a radius of thirty statute miles from Martinsburg. Not until August 23, 1965, did the PUC hand down its order declaring for statute miles and directing McQuaide to stop violating its certificate by movements beyond thirty statute miles from Martinsburg. *Joseph R. Protsko t/d/b/a Altoona-Pittsburgh Freight Line, et al.,* 42 Pa. P.U.C. 385 (1965). This was appealed to the Superior Court pending which the PUC stayed its cease and desist order. On February 25, 1966, the Superior Court remanded the record for further hearing and argument, after which, on May 1, 1967, the PUC affirmed its previous order.[1] *Joseph R. Protsko t/d/b/a Altoona- Pittsburgh Freight Line, et al.,* 43 Pa. P.U.C. 198 (1967). From the date of the order of the Superior Court, McQuaide ceased movements in the area held not to be within its authority, except for certain violations assertedly inadvertent, for which it was "fined" $550 by the P.U.C. *See Rule Against McQuaide,* 43 Pa. P.U.C. 101 (1966).

The instant application proceedings were commenced by McQuaide on September 16, 1965, seeking rights in all of Johnstown and were followed on July 28, 1967, by a request for authority in the previously served suburban Johnstown areas. The Commission's orders granting McQuaide's applications were made respectively on April 19, 1971, and May 17, 1971.

J-PX makes two challenges to the Commission's orders. First, it contends that McQuaide established no need for its service to all of Johnstown and the suburban area in question, and second, it argues that McQuaide's violations of its certificates should have impelled the PUC to deny broader rights.

---

[1] It is conceded that the Superior Court order which is not before us and is unreported had the effect of vacating the stay order.

As Judge WILKINSON wrote in *Tranter v. Pennsylvania Public Utility Commission*, 4 Pa. Commonwealth Ct. 585, 588, 288 A. 2d 837, 839 (1972) : "Our scope of review is delineated by the Public Utility Law, Act of May 28, 1937, P. L. 1053, as amended, 66 P.S. §1101, et seq., which provides in Section 1106, 66 P.S. §1437, and Section 1112, 66 P.S. §1442, that the order of the Commission shall not be vacated or set aside on appeal except for error of law or lack of evidence to support it, and that the order shall be prima facie evidence of the facts found." The provision of the Public Utility Law cited by Judge WILKINSON has been held to mean that we may not conceive an independent judgment and substitute it for the judgment of the Commission and that we may not indulge in processes of weighing evidence and resolving conflicting testimony. *McNaughton Bros., Inc. v. Pa. P.U.C.*, 2 Pa. Commonwealth Ct. 319, 278 A. 2d 186 (1971) ; *Highway Express Lines, Inc. v. Pa. P.U.C.*, 195 Pa. Superior Ct. 92, 169 A. 2d 798 (1961) ; *Clemmer v. Pa. P.U.C.*, 207 Pa. Superior Ct. 388, 217 A. 2d 800 (1966) ; *Peoples Cab Co. v. P.U.C.*, 216 Pa. Superior Ct. 18, 260 A. 2d 490 (1969). Rather, as stated by Justice ROBERTS in *Philadelphia Suburban Water Co. v. Pa. P.U.C.*, 425 Pa. 501, 508, 512, 229 A. 2d 748, 752, 754 (1967) :

"As regards . . . the public interest . . . the commission's discretion must be accepted unless totally without support in the record based on an error of law or unconstitutional. . . .

. . . . .

"Neither this Court nor the Superior Court . . . was intended by the Legislature to weigh the various factors entering in the granting of a certificate of public convenience and necessity by the Commission. . . ."

Our review of this record, including the testimony of thirty-six witnesses produced by the applicant, dis-

closes substantial and compelling evidence of public need of McQuaide's services in all of Johnstown and the suburbs covered by its application in the moving of property to and from Allegheny County.[2] Many of these witnesses compared McQuaide's and J-PX's service to the disadvantage of the latter for its failure to provide weekend deliveries or same day service to the Pittsburgh area. Some, located in the service areas here sought, have, since McQuaide was compelled by the Commission to discontinue service there, arranged to pick up and deliver property at the McQuaide dock in preference to using other carriers. We find no lack of evidence to support the Commission's findings that the enlarged rights McQuaide sought are necessary for the service, accommodation and convenience of the public in and around Johnstown needing motor freight service to Allegheny County.

J-PX's other and more substantial contention is that the Commission erred in considering movements made by McQuaide in violation of its certificate, found by the Commission after three years of litigation to include less area than McQuaide had believed. The PUC did consider such of these movements as were made until the Superior Court order entered in February 1966 because it believed and found that McQuaide transacted this business in good faith and under a claim of right. It found good faith to be evidenced by the fact that McQuaide's predecessor had performed the same service, that McQuaide spent substantial sums after acquiring its rights preparing to serve the larger area, that it protested other applications for certificates for the disputed areas, that it filed tariffs for the areas,

---

[2] There were originally 15 protestants to the application for rights in Johnstown and 10 to the application for the rights in suburban Johnstown. All have withdrawn except J-PX which is interested only in Allegheny County.

and that, in essence, McQuaide was sincere in its belief that its certificate was based upon nautical miles.

J-PX by its brief declares on this phase of its case that wilful violations of the Public Utility Law constitute a basis for the denial of a certificate of convenience. This is much too broadly stated. The cases it relies upon hold only that movements made in wilful violation of authority may not be considered by the Commission as evidence of need. *D. F. Bast, Inc. v. Pa. P. U.C.*, 397 Pa. 246, 154 A. 2d 505 (1959); *Bunting-Bristol Transfer, Inc. v. Pa. P.U.C.*, 418 Pa. 286, 210 A. 2d 281 (1965). However, movements made in good faith, although illegal, may support a grant of rights. *Tranter v. Pa. P.U.C., supra; Lancaster Transportation Co., et al. v. Pa. P.U.C.*, 181 Pa. Superior Ct. 129, 124 A. 2d 380 (1956). Thus, the question before us is whether the Commission's determination that McQuaide's movements until February 1966 were undertaken in good faith is supported in the record. The considerations recited above which led the Commission to its conclusion that good faith had been demonstrated were relevant. We have read the Commission's order and opinion deciding the certificate case against McQuaide[3] and it is apparent that the Commission there decided for the first time what it meant by airline miles. Further, there is no evidence of bad faith except as there might be presumption of bad faith arising from the mere fact of illegal movements.[4] We conclude that the Commission's finding in this aspect of the case is supported in the evidence, was sufficient to overcome any such presumption and that we should not disturb it. The fact that McQuaide made illegal movements after

[3] *Joseph R. Protsko t/d/b/a Altoona-Pittsburgh Freight Lines, et al.*, 42 Pa. P.U.C. 385 (1965).

[4] *See* concurring opinion of Mr. Justice Cohen in *Bunting-Bristol Transfer, Inc. v. Pa. P.U.C., supra*, 418 Pa. at 293, 210 A. 2d at 284.

February 1966 is not disqualifying first, because the Commission did not consider them in determining need and second, because they could well have been inadvertent results of the Commission's original grant causing the limit of McQuaide's authority to pass on the arc of a circle through the built-up area of the City of Johnstown.

The Commission's order is affirmed.