Frank Manganell, Jr., trading as Fleetwood Limousine Service, Appellant, *v.* Pennsylvania Public Utility Commission, Appellee, and Daniel Peter Gabriel, Intervening Appellee.

Argued February 4, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, MENCER, ROGERS and BLATT. Judge WILKINSON, JR., did not participate.

*Cletus P. Lyman,* for appellant.

*Thomas C. Dick,* Assistant Counsel, with him *Edward Munce,* Acting Counsel, for appellee.

*Lawrence M. Klemow,* with him *Glassberg & Klemow,* for intervening appellee.

OPINION BY JUDGE KRAMER, April 18, 1975:

This is an appeal by Frank Manganell (Manganell) from an order of the Public Utility Commission (Commission) dated August 14, 1974, in which the Commission granted a certificate of public convenience to Daniel P. Gabriel (Gabriel), authorizing Gabriel to operate a limousine service in the vicinity of Hazleton, Pennsylvania. Manganell is the owner-operator of the only pre-existing limousine service in Hazleton and he appeared as a protestant before the Commission.

Gabriel's application was considered by the Commission pursuant to section 203 of the Public Utility Law (Act), Act of May 28, 1937, P.L. 1053, *as amended,* 66 P.S. §1123, which provides, in pertinent part:

"A certificate of public convenience shall be granted by order of the commission, only if and when the commission shall find or determine that the granting of such certificate is necessary or proper for the service, accommodation, convenience, or safety of the public. . . ."

Our power to review the Commission's order is likewise governed by statute. Section 1107 of the Act, 66 P.S. §1437, provides in part:

"The order of the commission shall not be vacated or set aside, either in whole or in part, except for error of law or lack of evidence to support the finding, determination, or order of the commission, or violation of constitutional rights."

The only real issue presented by this appeal is whether the Commission's finding that "a reasonable need exists on the part of the public for the proposed service" is supported by the evidence. We conclude that it is not, and we must reverse.

No complaints regarding the service presently provided by Manganell were offered to the Commission. Gabriel attempted to meet his burden of proving a need for the proposed new service by the testimony of four witnesses (including himself), who offered their opinions on the adequacy of existing service.

Gabriel, in his testimony, admitted that prior to the filing of his application with the Commission he had been engaged in carrying passengers for compensation on an irregular basis, operating out of a fire house, where he was employed as a fireman. Gabriel maintained that this service was "free" but he admitted that he accepted "gifts" when they were offered to him. The "free" limousine service was conducted without any approval by the Commission and was illegal.

It is settled law that in cases such as this one, a need for service cannot be proven through evidence of an illegal course of conduct if such conduct represents a bad faith violation of the Act or the Commission's regulations or orders. *Bunting Bristol Transfer, Inc. v. Pennsylvania Public Utility Commission*, 418 Pa. 286, 210 A.2d 281 (1965); *Johnstown-Pittsburgh Express, Inc. v. Public Utility Commission*, 5 Pa. Commonwealth Ct. 521, 291 A.2d 545 (1972). Such evidence is deemed "incompetent."

In *Bristol Transfer*, the Supreme Court noted the obligation of the Commission to make a specific finding

when a legitimate issue arises as to whether illegal utility operations are in bad faith or the result of a *bona fide* misunderstanding of the law. The Supreme Court also pointed out that the burden of proving good faith in such circumstances is upon the applicant who has allegedly operated illegally, and this burden must be discharged by the production of "clear and convincing evidence." 418 Pa. at 292-93, 210 A.2d at 284.

In the instant case the Commission made no finding on this point, even though the question of Gabriel's past conduct was raised almost constantly throughout the hearing by Manganell's counsel. Gabriel's only evidence in support of "good faith" was his own statement that when he learned that he "could get arrested" for operating an uncertified common carrier he filed the application in question in the instant case. Since the Commission made no finding, we have no way of knowing whether, in its judgment, there was sufficient additional evidence to support the order. In any event, it is unnecessary for us to remand, since, even assuming that all of Gabriel's testimony was competent, we find a lack of sufficient evidence to support a finding of need.

As to Gabriel's testimony, it must be observed that evidence establishing that people were willing to accept a "free" limousine service, or a service for which the passengers could set their own rates through "gifts," does not logically support the proposition that those same individuals would be willing to pay the fares which an organized, full-time enterprise would have to charge to stay in business. It is not at all surprising that Gabriel found many people asking if he would transport them free of charge, or at nominal cost, once his willingness to perform such services became known. There is, however, a considerable difference between the finances of a part-time, odd-job chauffeuring service and the requirements of a full-time limousine service. In short, Gabriel's evidence proved nothing with respect to the need for the service he proposed.

The second witness called by Gabriel also based his opinion regarding the need for service on his experience as a self-described "moon-lighting chauffeur." This witness also admitted that he had done at least a portion of his "moonlighting" with one of Gabriel's personal automobiles. The evidence offered by this witness suffers from the same infirmity as did Gabriel's, and lends no real support to the Commission's findings.

Gabriel's third and fourth witnesses merely offered their personal opinions that Gabriel's service was needed. Neither of them possessed any special knowledge of the transportation needs of the Hazleton area, other than the fact that they also had done some part-time chauffeur's work, though apparently not as much as had Gabriel or the other witness.[1] One of these witnesses rendered his own opinion testimony virtually useless when he stated, on the record, that, "I am not too familiar with the service that exists." This remark was followed by this exchange on cross-examination:

"Q. Do you have any reason to believe that Mr. Manganell's service would be inadequate for the need which you have described?

"A. Far be it for me, sir, for me to comment on it. I don't know the service.

"Q. You have no information about Mr. Manganell's service?

"A. Honestly I do not."

Manganell offered uncontradicted evidence that the gross receipts for his service during 1972[2] were only $9,247.05, against expenses of $16,302.93. The net loss

---

1. Gabriel and the three other witnesses are all firemen employed by the City of Hazleton. There is evidence in the record which indicates that when they were "moonlighting" Gabriel and the other firemen sometimes received requests for their services via the firehouse telephones.

2. The hearing in this case was held on May 29, 1973.

was $7,055.88, and Manganell did not take a personal salary out of his business.

In light of the above, we cannot conclude that the Commission's findings are supported by the evidence, and accordingly, we

ORDER

AND NOW, this 18th day of April, 1975, it is hereby ordered that the order of the Pennsylvania Public Utility Commission, dated August 14, 1975, granting Daniel P. Gabriel a certificate of public convenience to operate a a limousine service, is reversed; and it is further ordered that said certificate be revoked.