Opinion by
Rhodes, P. J.,
This appeal is from an order of the Pennsylvania Public Utility Commission dated March 19, 1962, denying the application of Jones Motor Company, Inc., of April 9, 1957, for additional certificated authority as a motor carrier.[1] The application apparently was one *138 of the most comprehensive ever presented to the commission.
The commission refused the application on the ground that the granting of the application is not necessary for the convenience or accommodation of the public.[2] Appellant contends that the proof of the need for the proposed service and of the inadequacy of the existing service is clear.
On April 10, 1957, Jones Motor Company, Inc., filed its application with the commission. Hearings were held at various places in Pennsylvania between July 31, 1957, and February 16, 1960, requiring fifty-eight days. The record, supplemented by exhibits, totals more than 8,000 pages. • There were 110 shipper witnesses and four carrier witnesses in support of the *139 application. Protestants presented approximately 145 public shipper and receiver witnesses in opposition to the application, together with a large number of employes of protesting motor carriers. After the termination of the hearings, the commission, on March 21, 1960, issued an order providing for order nisi procedure before final order. Requests for findings and conclusions and voluminous briefs were filed. On March 19, 1962, the commission dispensed with the order nisi procedure and issued its final order instead.
Although the appellant assigns eight questions on this appeal, its position may be summarized as follows:
(1) The commission’s failure to follow order nisi procedure consistent with its prior order of Mareh 21, 1960, constitutes a deprivation of due process of law.
(2) The commission’s order of March 19, 1962, setting forth in “summary fashion and in general terms” the reasons for denial of the application (a) is lacking in specific findings of fact and conclusions of law as required by the Public Utility Law; (b) is indicative of a failure to properly review the evidence; (c) is predicated upon extraneous matter; and (d) is an unreasonable and arbitrary abuse of discretion, contrary to the evidence and the applicable law.
Appellant is seeking by this application extensive single-line authority involving points in twenty-four counties extending from the Ohio line on the west to the New Jersey line on the east, and also state-wide interline authority at eleven named interchange points. It is appellant’s contention that, unless it is able to combine its existing eastern and western authorities, it will not be able to provide a unified operation for the shippers it is serving or may serve in Pennsylvania, and that this will result in appellant’s inability to satisfy all the transportation needs of these shippers and cause some inconvenience and loss of revenue to appellant.
*140 Appellant contends it was deprived of due process of law when the commission failed to follow order nisi procedure consistent with its prior order of March 21, 1960.
At the conclusion of the hearings, protestant Motor Freight Express filed a written request for order nisi procedure with findings of fact and oral argument. In that motion it was submitted that an order nisi with findings of fact and opportunity to file and argue exceptions thereto was essential under the circumstances. Appellant filed an answer denying that an order nisi was required or was appropriate, and contended that, under Rule 50 of the Commission’s Rules of Practice, order nisi procedure was intended to apply principally to rate proceedings. On March 21, 1960, the commission. entered an interim order having concluded that the extensive record warranted the use of order nisi procedure, and directed the parties to file, if they so desired, requests for findings of fact and conclusions of law, together with a brief in support thereof. The commission denied without prejudice the motion for 'oral argument.
Appellant then filed requests for findings of fact and conclusions of law. Two years thereafter the commission filed its order dated March 19, 1962, in which it denied the application for lack of necessity, and pointed out that the record as a whole failed to reveal the quality or quantity of evidence sufficient to justify the grant of the rights sought. . It found that existing service was generally adequate and satisfactory, and that further competition was not necessary to provide adequate service. As we indicated, no order nisi was filed. Appellant filed a petition for rehearing and reconsideration and then asked the commission to follow the order nisi procedure. Answers were filed by protestants. On June 11, 1962, the commission denied appellant’s petition.
*141 We thus have a situation where the party who originally opposed the granting of an order nisi procedure is now arguing that the dispensing with such procedure is a violation of due process of law. With this we cannot agree.
No one is entitled to he heard on a constitutional point which does not prejudicially affect him in the case under review. Smith v. Pennsylvania, Public Utility Commission, 192 Pa. Superior Ct. 424, 428, 162 A. 2d 80.. It is well settled that the courts always have the power to waive or suspend their own rules. Such rules are intended as aids to the orderly administration of justice as well as to effective procedure. “So, also, are rules of a tribunal whose functions are administrative and but semi-judicial. . . . This court will not interfere with the action of the commission in procedural matters, unless the action resulted in depriving a party of some substantive right.” Gillis v. Public Service Commission, 105 Pa. Superior Ct. 389, 394, 161 A. 563, 565. See Pittsburgh v. Pennsylvania Public Utility Commission, 153 Pa. Superior Ct. 83, 86, 87, 33 A. 2d 641.
What the commission did here was to revert to the normal procedure it follows in application cases. Appellant’s answer to the request for an order nisi proceeding set forth repeatedly that there was no need to depart from the customary procedure in application proceedings, and that oral argument was not necessary because “There is no reason why any arguments which protestants desire to raise cannot appropriately be raised by ways of briefs without further unduly prolonging this proceeding.” It is true that due process requires the opportunity to argue the case before the deciding tribunal. While there is no oral argument as a matter of course in every proceeding, rule 49 of the commission provides that the parties may request it. However, in the absence of a request, it cannot be said *142 that the appellant was denied due process in not being heard by the commission. Smith v. Pennsylvania, Public Utility Commission, supra, 192 Pa. Superior Ct. 424, 429, 430, 162 A. 2d 80. Appellant did not file a request within five days as provided by the rules. It refrained from such request not in reliance on the order nisi petition, but because it did not desire to have the commission’s order delayed by what it considered unnecessary oral arguments. Appellant’s request for oral argument, which was part of its petition for reconsideration of the order denying the application, does not cure its initial waiver of the right to request oral argument in accordance with the commission’s rule 49. “The disposition of a petition for rehearing is administrative in nature; it involves no new adjudication of rights. In essence it is an affirmation of the original order and is not required to be supported by an explanation of the reasons for its disposition.” Smith v. Pennsylvania Public Utility Commission, supra, 192 Pa. Superior Ct. 424, 431, 162 A. 2d 80, 84. Appellant therefore waived and refused its right to request oral argument. In actuality, dispensing with the order nisi procedure fulfilled all the requests the appellant submitted in its answer. While we do not condone the long delay in this case by the commission or the abrupt change of procedure, we fail to see any prejudice to appellant. Appellant waived oral argument independent of the order nisi procedure, not in reliance thereon, and it had full opportunity to present its contentions before the commission by brief.
Appellant contends that the commission’s order of March 19, 1962, is erroneous and defective in that it does not include specific findings of fact and conclusions of law concerning necessity and the inadequacy of existing service. It further contends that it is indicative of a failure to properly review the evidence, *143 that it is predicated upon extraneous matter, that it is an unreasonable and arbitrary abuse of discretion, and that it is contrary to the evidence and the applicable law. After a careful reading of the order and record, we cannot agree with the appellant.
Section 1005 of the Public Utility Law, 66 PS §1395, provides: “After the conclusion of the hearing, the commission shall make and file its findings and order with its opinion, if any. Its findings shall be in sufficient detail to enable the court on appeal, to determine the controverted question presented by the proceeding, and whether proper weight was given to the evidence.”
What we have said on this matter on another occasion may Avell be repeated here: “The complaint that findings are insufficient, when warranted therefore, in reality should come from us. But formal findings in proceedings such as this are not as essential as in some others, e.g., as in rate cases. And in this proceeding more detailed and specific findings would not have been helpful to us.” Pennsylvania Railroad Company v. Pennsylvania Public Utility Commission, 181 Pa. Superior Ct. 343, 352, 124 A. 2d 685, 690. The basic requirement is that the commission’s order be sufficiently specific to enable us to determine the controverted question and whether proper weight was given to the evidence. Lancaster Transportation Company v. Pennsylvania Public Utility Commission, 181 Pa. Superior Ct. 129, 141, 124 A. 2d 380; Follmer Trucking Company v. Pennsylvania Public Utility Commission, 171 Pa. Superior Ct. 75, 78, 90 A. 2d 294.
In this instance the basic findings might have been more specific, but we encountered no substantial difficulty in determining the important factors which influenced the commission to enter its final order.
A review and a consideration of the evidence demonstrate support for the commission’s order. The *144 record also indicates a basic conflict between tbe testimony, of applicant and protestants.
' Tbe testimony of tbe various witnesses presented by the appellant to show necessity and inadequacy of existing service was basically similar. The testimony of George N. Nicholson was typical of such testimony. Mr. Nicholson is a vice-president of the firm of Glanz, Behm, and Herring, Inc., in Philadelphia. His company is engaged in the wholesale floor covering business and has branches in Harrisburg, Wilkes-Barre, and Forty Fort. During 1959 the company did a business of approximately $2,000,000 of which about $!,- 500,000 was done through the Philadelphia office. On occasions the company ships commodities between the Philadelphia and Harrisburg branches, the shipments averaging about 6,000 pounds. He introduced an exhibit indicating the 200 points to which his company made shipments from Philadelphia. Rail service is used only where it is absolutely necessary because the company gets poor service from rail deliveries. The company has been using applicant’s service from Philadelphia to points within a 30-mile radius and the service has been satisfactory. In addition, the service of Hall’s Motor Transit Company and Motor Freight Express to Harrisburg has been used but that service was deemed “unreliable.” His exhibits indicated that when their service was used shipments were not picked up for as long as three days after the service was requested. On one occasion Hall’s Motor did not provide the proper type of equipment.
■The witness testified that his company needs overnight service to points in the Harrisburg area. On one occasion a pickup was called for on a Friday, and when the dealer did not receive the pickup on Monday he canceled his order. During the busy season, his company will use the applicant’s service every day; in the off season he will use it about two or three days a *145 week. His company needs rapid transit, prompt pickup, and proper equipment.
On cross-examination the witness, who had presented on Exhibit 27 a multitude of points to which shipments were made by his company, could not identify the carriers involved and knew of no specific complaints involving such shipments. He testified that, with respect to points where there are carriers available, there was adequate service. Of the several carriers authorized to render service from points within’ a 30-mile radius of Philadelphia, there were no complaints regarding service. He testified that his company has no quarrel with the services of any carrier after a pickup is made, and that to his knowledge there have been no complaints about pickups. He admitted that at times calls are made in the afternoon and that pickup is not expected on the same day.
The testimony presented by the protestan-ts' to show adequacy of existing service was substantially identical. The testimony of J. Schuster, assistant manager of Lyon Metal Products Company of York, Pennsylvania, is illustrative. His company has been using the service of Hall’s Motor Transit Company, Central Transfer and Storage Company, Motor Freight Express, and the applicant. His company ships daily to points all over the Commonwealth. The company has been receiving overnight shipments in most cases, and the service as it now exists is very satisfactory. When the company needs emergency service the presently certified carriers have provided that service. In his opinion, there is no need for additional'service for the hauling of shipments to points to which his company needs service. Should the appellant be certified, his company would not use it. On cross-examination he stated that, although some shipments needed to be interchanged and in some cases second-day service is *146 provided, Ms company has never had any complaints from its customers as to that type of service.
In considering an application for a certificate of public convenience, it is the commission’s duty to determine whether or not the granting of such certificate is necessary or proper for the service, accommodation, convenience, or safety of the public. Section 203 of the Public Utility Law, 66 PS §1123; Railway Express Agency, Inc., v. Pennsylvania Public Utility Commission, 195 Pa. Superior Ct. 394, 171 A. 2d 860. When such a determination has been made and an order entered by the commission, we may not disturb that order except for error of law, lack of evidence to support the finding, determination, or order of the commission, or a violation of constitutional rights. Section 1107 of the Public Utility Law, as amended, 66 PS §1437; New Kensington City Lines, Inc., v. Pennsylvania Public Utility Commission, 200 Pa. Superior Ct. 490, 492, 190 A. 2d 179.
Appellant had the burden of proving public need for the proposed service and inadequacy of existing service. Appellant was required to show a reasonable additional or existing necessity not satisfied by existing service, and that the proposed service would tend to correct or substantially improve that condition. Zurcher v. Pennsylvania Public Utility Commission, 173 Pa. Superior Ct. 343, 349, 98 A. 2d 218.
A thorough review of the evidence demonstrates a conflict in the direct evidence particularly as it related to additional public need and the adequacy of existing service.' Aside from the issue of credibility and weight of evidence, which were for the commission, there was an initial apparent balance of evidence presented by the record as a whole. The fact that, on cross-examination, witnesses for the applicant in many respects corroborated the satisfactory service of existing carriers would tend to determine the ultimate is *147 sue in favor of protestants. Whether, under the circumstances, there should be additional competition in this competitive transportation was for the commission to determine. “. . . where the evidence, as here, presents a definite conflict as to a public need for an applicant’s service in an area, it is for the commission to determine whether the available equipment and facilities are sufficient and adequate to meet the public demands, and the extent of competition to be allowed is largely an administrative question within the sound discretion and judgment of the commission.” Zurcher v. Pennsylvania Public Utility Commission, supra, 173 Pa. Superior Ct. 343, 348, 98 A. 2d 218, 220.
The commission’s order will not be disturbed unless there is a lack of support for it in the evidence or it is the result of an abuse of discretion or of capricious action. Citizens Water Company v. Pennsylvania Public Utility Commission, 181 Pa. Superior Ct. 301, 307, 124 A. 2d 123. We find that the order of the commission indicates its awareness of the real issues, and that it properly reviewed the testimony. The evidence supports the decision of the commission which was not shown to be capricious or arbitrary in the exercise of its discretion.
Appellant argues that the order of March 19, 1962, is predicated in part upon extraneous matter and should be reversed. The alleged extraneous matter was the commission’s reference to Pennsylvania Public Utility Commission v. Jones Motor Company, Inc., 188 Pa. Superior Ct. 449, 149 A. 2d 491, allocatur refused 189 Pa. Superior Ct. xxix, reversed, on jurisdictional grounds, 361 U.S. 11, 80 S. Ct. 60, 4 L. Ed. 2d 50. This was a case involving subterfuge. In that case the commission found, and we affirmed, that Jones Motor had instituted service between Philadelphia and Allentown by way of circuitous routes through New Jersey to avoid Pennsylvania jurisdiction. In the present case *148 Jones Motor contended, inter alia, that it needed the rights applied for to avoid uneconomical transportation resulting from circuitous routing and back hauling. In rejecting the contention, the commission found the obvious fact that Jones Motor was using its own wasteful actions as a new basis for expansion of its rights. It also took judicial notice of the Jones Motor subterfuge case, and noted by analogy that it would be ironical for Jones Motor to request intrastate rights because its existing interstate operations are circuitous. We do not agree that the commission’s action indicates a preoccupation with other litigation rather than with the real issues of this case. The reference to the prior Jones Motor ease was not improper in the manner in which it was utilized as an analogy. The record fully supports the commission’s action.
The record in this case is voluminous. The rights sought are extensive, the briefs and arguments of all parties are long and thorough. Although the application was to some extent ambiguous, complicated, and cumbersome, as the commission indicated, the real and basic issues were primarily factual, and were for the commission to determine. While the commission commented about its belief that the application was fatally defective because it was ambiguous, it nevertheless discussed and resolved the basic issues upon which its ultimate decision actually rested. We note that applications should be presented with clarity, especially those involving extension of existing rights and extensive additional rights. See Follmer Trucking Company v. Pennsylvania Public Utility Commission, 189 Pa. Superior Ct. 204, 217, 150 A. 2d 168.
The order of the commission is affirmed.

 The application was divided into seven lettered paragraphs each of which was in turn subdivided numerically and may be restated as follows:
1. Between points on the following described routes, alternate routes, spur routes, off route points, and extensions thereof:
—Between Beading and Philadelphia via three routes
—'Between Harrisburg and Beading via two routes with a new extension consolidating both routes
—Between Harrisburg and Lewistown including points within five miles of Lewistown
—Between Harrisburg and York extending via Hanover to McSherrytown
—Extensions from Harrisburg to Middletown and to Cressona and Auburn together with operating routes via the Pennsylvania Turnpike and various connections.
*138 2. Between points in the following areas:
• — Boyertown and fiv.e miles
—Spring City and ten miles
—Beading and ten miles
—Pittsburgh and twenty miles
—Harrisburg and twenty miles
—Philadelphia and thirty miles
3. Between points on the described routes, on the one hand, and, on the other:
—points, in the Boyertown, Spring City, Beading, Pittsburgh, Harrisburg, and Philadelphia areas
—Myerstown and ten miles
• — specified points on routes and in Perry, Juniata, and Mifflin counties
4. Between points in the Boyertown, Spring City, and Beading areas, on the one hand, and, on the other, points in the Pittsburgh, Harrisburg, and Philadelphia areas
5. Interchange authority with Class A and B carriers at Pittsburgh, Greensburg, Hanover, York, New Cumberland, Lemoyne, Harrisburg, Steelton, Elizabethtown, Beading, and Philadelphia.

 Fifty-eight protests and petitions to intervene were filed by motor and rail carriers. During the course of the hearings, 32 protestants withdrew. Of the remaining protestants, 15 offered testimony, and 7 became intervening appellees in this proceeding.