John Gibbons, Inc., Appellant, *v.* Pennsylvania Public Utility Commission, Appellee, and Follmer Trucking Company and Fowler & Williams, Inc., Intervening Appellees.

Argued February 4, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, MENCER, ROGERS and BLATT. Judge WILKINSON, JR. did not participate.

*Alan Kahn,* with him *Kahn, Bushman, Rosenberg & Weisberg,* for appellant.

*Frank B. Wilmarth,* Asistant Counsel, with him *Alfred N. Lowenstein,* Assistant Counsel, and *Edward Munce,* Acting Counsel, for appellee.

*Herbert R. Nurick,* with him *McNees, Wallace & Nurick,* for intervening appellees.

OPINION BY JUDGE MENCER, March 25, 1975

On May 16, 1973, an application was filed with the Pennsylvania Public Utility Commission (Commission) by John Gibbons, Inc. (applicant) for an amendment of its certificate of public convenience. Applicant sought the additional right "to permit the transportation of property from the facilities of the Drackett Products Company and the B.A.S.F. Wyandotte Corporation in the Borough of East Stroudsburg and the Township of Stroud, Monroe County, to points in Pennsylvania, east of U.S. Route 15, and vice versa."

Protests were filed to the application on behalf of Follmer Trucking Company (Follmer) and Fowler & Williams, Inc. (F & W). Following two hearings, the Commission, on May 24, 1974, adopted a short-form order denying the modification sought by applicant. Thereafter, applicant filed this appeal. The Commission issued its long-form order on August 8, 1974 to which Commissioner Carter dissented. Protestants petitioned to intervene as party appellees and we granted this petition on August 27, 1974.

The three questions presented to this Court by applicant can be condensed to what is in essence only one question: whether or not the Commission was arbitrary and capricious or ignored the weight of the evidence in its decision denying the modification of the certificate.

We must keep in mind, when considering the legal sufficiency of the evidence, the fact that this Court cannot exercise independent judgment on the record and can neither weigh evidence nor resolve conflicting testimony. If there is substantial evidence supporting the order of the Commission, we may not set it aside. Substantial evidence is such relevant evidence as a reasonable mind can accept as adequate to support a conclusion. *Bucks*

*County Board of Commissioners v. Pennsylvania Public Utility Commision,* 11 Pa. Commonwealth Ct. 487, 313 A.2d 185 (1973).

It is a sound principle of law that "[i]n cases of this nature it is the Commission's duty to determine whether or not the granting of a certificate of public convenience is necessary or proper for the service, accommodation, convenience, or safety of the public. Section 203 of the Public Utility Law, Act of May 28, 1937, P.L. 1053, 66 P.S. §1123. When such a determination has been made and an order entered by the Commission, we may not disturb that order except for an error of law, lack of evidence to support the finding, determination or order of the Commission, or a violation of constitutional rights. Section 1107 of the Public Utility Law, as amended, 66 P.S. §1437.

"Applicant has the burden of proving public need for the proposed service and the inadequacy of existing service. It is required to show a reasonable additional necessity not satisfied by existing service, and that the proposed service would tend to correct or substantially improve that condition. Jones Motor Company, Inc. v. Pennsylvania Public Utility Commission, 202 Pa. Superior Ct. 134, 195 A.2d 125 (1963)." *Seiferd v. Pennsylvania Public Utility Commission,* 12 Pa. Commonwealth Ct. 85, 87, 315 A.2d 320, 321 (1974).

We have carefully read the testimony and find evidence to support the order of the Commission, which was not capricious or arbitrary in the exercise of its discretion. Applicant has not met its burden of proving the need for the proposed service or the inadequacy of the existing service. The Commission fairly summarized the salient evidence when, in its long-form order, it stated:

"The evidence of inadequacies in existing certificated carrier service to Drackett and Wyandotte was sparse. It consisted mainly of testimony pertaining to

certain exhibits prepared by Drackett which purport to demonstrate protestants' pick up failures and faults relative to protestants' customer service with regard to tardy deliveries, shortage and damage claims and allocation of segregation charges.

"Applicant's Exhibit 6 was offered to show time of actual pick up by protestant carriers relative to the time Drackett had requested pick up on dates from May 29, 1973 through July 27, 1973. As only infrequently did arrival occur exactly at the time 'scheduled for', applicant infers untimely pick ups. However, when the testimony is examined one discovers that this exhibit was part of the shippers dock log established so Drackett could record the date when a carrier was first called, the time scheduled for pick up and the actual time of the carrier's arrival for that shipment. The testimony also discloses that the general understanding was not that carriers adhere rigidly to assigned times, but rather, in the case of the protestant carriers, that the shipment would be ready at the time scheduled and pick up should be before the end of that day.

"Exhibit 7 was a summary meant to demonstrate customer service failures for the two protestant carriers. The exhibit showed customer complaints filed against Follmer and F & W for the period of August 31, 1973 through September 26, 1973.

"When the testimony [is] analyzed, even the sparse and sometimes contradictory evidence indicates several of the notations to be in error or that the alleged 'failure' was merely a justifiable delay. As to complaints not explained away, it is certainly to be expected that given the volume transported by protestants some unpreventable customer dissatisfaction would ensue.

"Applicant's Exhibit 8 purported to show extensive damage and shortage claims filed against pro-

testants. However, the mere filing of a claim does not guarantee its validity and the testimony establishes that frequently the claims were due to customer error or to shortages existing at the time of pick up over which the carrier had absolutely no control. Again, this evidence must be discounted as to its probative value.[1]

"Also, Drackett alleged extreme difficulties were created where F & W 'overcharged' in the amount of some $2600. Closer examination of the testimony reveals that these charges were for segregation of palletized shipments which F & W drivers were required to reload at the customer's facility before shipment would be accepted. Large grocery chains would accept shipment with only one item to a pallet and where a variety of items are shipped on a single pallet to such a consignee F & W tariffs permitted segregation charges. The confusion over this segregation charge was created through some mix up in billing and audit practices of the two companies and is understandable.

"Despite the tenor of evidence offered by Gibbons and its supporting shippers, from the record it appears that neither protestant ever received a complaint from the supporting shippers or from consignees of those shippers concerning the service protestants rendered. In fact, representatives of both shippers expressly testified that current service was generally adequate.

---

1. Appellant's brief mistakenly contends that in this paragraph the Commission sets forth a new invalid standard of requiring applicants to prove claims against other carriers in order to establish the inadequacy of service. We need not consider the validity of this theory since we conclude that the record amply supports a finding that the suggested claims, whether valid or not, are minimal in number and dollar amount for such an extensive shipping business.

"Both supporting shippers voiced some preference for direct delivery as opposed to the transfer system utilized by F & W with respect to small less than truckload shipments. The shippers also indicated a desire to use a carrier with interstate and intrastate authority to simplify routing and to eliminate inefficiencies in some interstate routes so that intrastate drops could be made enroute to interstate destinations. The Commission finds, however, upon consideration of these arguments, that in the balance existing certificated carriers presently hold authority to provide all reasonable service and accommodations to Drackett and Wyandotte.[2] Furthermore, the Commission finds that protestants and other carriers have at all times been providing the service actually requested, being ready, willing and able to meet all requirements of both supporting shippers as well as of other shippers in the same area as to inbound freight, special handling and pallet exchange. As well, both protestant carriers possess sufficient growth potential to keep pace with projected increases in productivity of the Drackett and Wyandotte plants at Stroud Township." (Footnotes added.)

Applicant's argument that evidence of protestants' current operating authority or potential for growth was not present in the record and applicant's reference to technical mistakes in the Commission's conclusions are contentions without substance. The evidence presented concerning the failure of applicant to fully exercise its current certificate, the actual lack of need for any sub-

---

2. Applicant failed to adequately carry its burden on this issue, and we are convinced by the record that the Commission gave full consideration to this matter despite applicant's lack of proof. In addition, we find the facts of this case are clearly distinguishable from the facts in *Modern Transfer Co., Inc. v. Pennsylvania Public Utility Commission*, 182 Pa. Superior Ct. 110, 125 A. 2d 463 (1956).

stantial inbound service, and the testimony concerning an adverse impact on the ability of the present carriers to continue service to other members of the public in the Stroudsburg area if the petition were granted further satisfies us that the order of the Commission is aptly foundationed upon substantial evidence.

Being satisfied that there exists a basis in the record for the denial of the application for extension of the certificate of public convenience, we issue the following

### ORDER

AND NOW, this 25th day of March, 1975, the order of the Pennsylvania Public Utility Commission, under date of August 8, 1974, which denied the amendment of the certificate of public convenience issued to John Gibbons, Inc., is hereby affirmed.