Yellow Cab Company of Pittsburgh, Petitioner v. Pennsylvania Public Utility Commission, Respondent.

Peoples Cab Company, Petitioner v. Pennsylvania Public Utility Commission, Respondent.

Argued March 14, 1980, before Judges WILKINSON, JR., BLATT and MACPHAIL, sitting as a panel of three.

*James R. Miller*, with him, *David J. Armstrong, Richard S. Dorfzaun*, and *Eugene F. Scanlon, Jr.*, of *Dickie, McCamey & Chilcote*, for Yellow Cab Company of Pittsburgh, petitioner.

*Robert C. VanRavenswaay*, General Counsel, for Peoples Cab Company, petitioner.

*Eric A. Rohrbaugh*, Assistant Counsel with him *Alfred N. Lowenstein*, Deputy Chief Counsel and *George M. Kashi*, Chief Counsel, for respondent.

*John A. Pillar*, of *Pillar & Mulroy*, for Radio Cab Company, intervenor.

OPINION BY JUDGE WILKINSON, JR., April 11, 1980:
By application filed before the Pennsylvania Public Utility Commission (Commission), Radio Cab Company (Radio Cab) seeks a license to begin to transport, as a common carrier, persons upon call or demand throughout the City of Pittsburgh. Notice of the application was published in the Pennsylvania Bulletin and in *The Pittsburgh Press*. The application was opposed by Yellow Cab Company (Yellow Cab), Peoples Cab Company (Peoples Cab), and Colonial Taxi Company. Seven days of hearings on the application were held in Pittsburgh from September 19, 1977 to May 24, 1978 before four different administrative law judges. Administrative Law Judge Michael Nemec conducted the last three hearings and on September 13, 1978 issued an Initial Decision recommending approval of Radio Cab's application. Exceptions to the Initial Decision were filed with the Commission by Yellow Cab and Peoples Cab. On

February 1, 1979 the Commission remanded the application to the administrative law judge for further hearing regarding the ownership of Radio Cab. A hearing was held in Pittsburgh on March 13, 1979 and Administrative Law Judge Nemec subsequently issued an addendum to his Initial Decision in which he found that Silas Knox and his wife Ollie own all outstanding shares of Radio Cab's stock and again recommended that the Commission grant Radio Cab's application. Exceptions to the addendum were filed by Yellow Cab. By order entered May 22, 1979 the Commission[1] accepted the Initial Decision, approved the application, and granted a certificate of public convenience to Radio Cab with the added condition that Radio Cab give priority service to the third and fifth wards (the Hill District) in the City of Pittsburgh. Yellow Cab and Peoples Cab filed separate appeals which are consolidated for review by this Court.

Radio Cab proposes to begin operation with ten new taxicabs and to add additional cabs within one year as warranted by business. Radio Cab's center for operations would be in a building Mr. Knox owns and Mr. Knox stated he would oversee all operations of the taxi business.

Section 1103(a) of the Public Utility Code, 66 Pa. C.S. §1103(a), provides that a "certificate of public convenience shall be granted by order of the commission, only if the commission shall find or determine that the granting of such certificate is necessary or proper for the service, accommodation, convenience, or safety of the public." When such a determination has been made and an order entered by the Commis-

---

[1] One member of the Commission dissented. However, the dissent was not based on a lack of need but was rather that the certification should require 50 percent of the trips to originate or end in the third or fifth wards, the limitation of cabs be ten, and within six months the cabs be radio-operated.

sion, we may not disturb that order except for an error of law lack of evidence to support the finding, determination or order of the Commission, or a violation of constitutional rights. *John Gibbons Inc. v. Pennsylvania Public Utility Commission,* 18 Pa. Commonwealth Ct. 114, 334 A.2d 806 (1975). As applicant, Radio Cab bears the burden of proving a public need for the proposed service, the inadequacy of existing service, and Radio Cab's capacity to meet the public need. *Applications of L.P. Transportation, Inc.,* 25 Pa. Commonwealth Ct. 412, 359 A.2d 848 (1976); *Public Utility Commission v. Purolator Courier Corp.,* 24 Pa. Commonwealth Ct. 301, 355 A.2d 850 (1976).

Yellow Cab and Peoples Cab first contend the Commission did not make essential findings of fact in sufficient detail. Section 703(e) of the Public Utility Code, 66 Pa. C.S. §703(e), directs that the Commission's "findings shall be in sufficient detail to enable the court on appeal, to determine the controverted question presented by the proceeding, and whether proper weight was given to the evidence." Yellow Cab and Peoples Cab argue that a valid order of the Commission granting Radio Cab a certificate of public convenience must be supported by affirmative findings that Mr. Knox and Radio Cab are qualified technically and financially, that existing service throughout the city is inadequate, and that Radio Cab's proposed service would tend to correct those inadequacies. Special findings of fact concerning those three items are not necessary where the factual questions are addressed in the Commission's general discussion, *Gettysburg Tours, Inc. v. Pennsylvania Public Utility Commission,* 42 Pa. Commonwealth Ct. 399, 400 A.2d 945 (1979), or where the discussion by the administrative law judge, adopted with his findings and conclusions by the Commission, sufficiently refers to factual matters supportive of the Commission's con-

clusions, *Paxtowne v. Pennsylvania Public Utility Commission*, 40 Pa. Commonwealth Ct. 646, 398 A.2d 254 (1979). Here the Commission's discussion taken with the administrative law judge's Initial Decision more than satisfies us that full consideration of the issues was had.

Yellow Cab and Peoples Cab next contend there is not substantial evidence in the record to support the conclusions that Radio Cab is fit to provide the service sought, that there is a need for additional taxicab service in the City of Pittsburgh, and that existing service is inadequate. As Judge Mencer wrote for this Court in *Gibbons, supra* at 116, 334 A.2d at 807:

> We must keep in mind, when considering the legal sufficiency of the evidence, the fact that this Court cannot exercise independent judgment on the record and can neither weigh evidence nor resolve conflicting testimony. If there is substantial evidence supporting the order of the Commission, we may not set it aside. Substantial evidence is such relevant evidence as a reasonable mind can accept as adequate to support a conclusion.

With these standards to guide us, we have examined the record and conclude there is substantial evidence to support the Commission's order.

Mr. Knox has resided in Pittsburgh for approximately 30 years and has operated a successful grocery business in the Hill District for more than twelve years. Radio Cab was incorporated in 1966 but this application was not filed until 1977 because Mr. Knox wanted to raise sufficient money to begin operations without partners. Mr. Knox has considerable experience in past taxicab ventures. Mr. Knox was one of four owners of Owl Cab Company (Owl Cab) which operated in Pittsburgh from 1947 to 1957, although Mr. Knox's active participation in management ceased

two years before the company ended operations. In 1957 the Commission granted Mr. Knox the right to take over the rights of Owl Cab in the name of Union Cab Company (Union Cab). Union Cab ceased operations after one year. In its decision the Commission noted that Union Cab started business with poor equipment and inadequate financial support and was certified in only two wards of the city. The Commission wrote, "[w]e seriously doubt that anyone could have successfully operated Union Cab Company under these adverse circumstances." Mr. Knox submitted cost estimates for the operation of Radio Cab and testified that Radio Cab has a cash account of $20,000 with no liabilities and that real estate having an estimated value of $60,000 and presently yielding rental income was deeded by Mr. and Mrs. Knox to Radio Cab. Among the evidence and witnesses presented by Yellow Cab were three of its executives whose testimony evaluated the costs to operate a ten-cab call and demand service in Pittsburgh and described the general operation of Yellow Cab and its need for more drivers. It was for the Commission to weigh this evidence, and we conclude that the Commission's resolution of the issue of Radio Cab's capacity and fitness was based on substantial evidence.

We are also satisfied that there was presented substantial evidence showing public need for the proposed service and the inadequacy of existing service. In support of Radio Cab's application was the testimony of 22 public witnesses. The administrative law judge's Initial Decision presented an accurate detailed account of their testimony, which the Commission summarized as testimony of

> various instances where drivers for Yellow [Cab] either refused or avoided offering service to black residents of the city and [of] the inadequate service provided by Yellow [Cab]

and Peoples [Cab] to and from certain communities in Pittsburgh. A large part of these witnesses' testimony related to ... the Hill District.

The Commission went on to state that "a careful reading of the testimony of the public witnesses indicates a need for improved taxicab service in downtown Pittsburgh as well as other . . . areas of the city." This Court has commented that in establishing "public need", "it is not necessary to prove an absolute necessity of present demand for the service in every point of the territory proposed, but it is incumbent upon the applicant to prove that such service is reasonably necessary for the accommodation and convenience of the public." *Dutchland Tours, Inc. v. Pennsylvania Public Utility Commission*, 19 Pa. Commonwealth Ct. 1, 6, 337 A.2d 922, 925 (1975). *See Reeder v. Pennsylvania Public Utility Commission*, 192 Pa. Superior Ct. 298, 162 A.2d 231 (1960).

Finally, Yellow Cab and Peoples Cab contend the Commission improperly evaluated the competitive impact of a grant of authority to Radio Cab. This Court has said:

> We do not believe the legislature, in enacting the Public Utility Law, intended to benefit established carriers by erecting artificial barriers to the entry of new competitors. It is, rather, the public interest and convenience which the law seeks to protect. The amount of competition which will best serve that interest is a matter within the discretion of the [Commission].

*Purolator Courier, supra* at 306-7, 355 A.2d at 853. It may be that one additional carrier, if not completely correcting the situation, would at least tend to improve the existing condition. The granting of a certificate of public convenience may have a salutary ef-

fect by also inducing the improvement of the services rendered by others. *Motor Freight Express v. Pennsylvania Public Utility Commission,* 180 Pa. Superior Ct. 294, 119 A.2d 661 (1956). We are satisfied by the Commission's discussion, and by its order that Radio Cab give priority service to the Hill District, that the Commission's granting Radio Cab's application was well within the Commission's administrative expertise and discretion.

Accordingly, we will enter the following

ORDER

AND Now, April 11, 1980, the order of the Pennsylvania Utility Commission, at Docket No. A.94012 F.2 entered May 22, 1979 is affirmed.