**WESTMORELAND COUNTY,**

v.

**Larry RODGERS, Sheila Schmutz, W.L. Rodgers Associates, and Jeffrey M. Thompson, Esquire,**

v.

**THE SCHOOL DISTRICT OF THE CITY OF MONESSEN, The City of Monessen, Allegheny Township, The Kiski Area School District and The Westmoreland Bar Association,**

**Larry Rodgers and W.L. Rodgers Associates, Appellants.**

Commonwealth Court of Pennsylvania.

Argued March 10, 1997.
Decided April 10, 1997.
Reargument Denied June 10, 1997.

---

Daniel L. Sautel, Pittsburgh, for appellants.

Robert L. Byer, Pittsburgh, for appellee, Westmoreland County.

Joseph P. O'Brien, Media, for amicus curiae, Pennsylvania Bar Association.

Before SMITH and PELLEGRINI, JJ., and JIULIANTE, Senior Judge.

PELLEGRINI, Judge.

Larry Rodgers and W.L. Rodgers Associates (Rodgers)[1] appeals from a decision of the Court of Common Pleas of Westmoreland County (trial court) that denied his motion for summary judgment and granted a motion for summary judgment in favor of Westmoreland County (County).

Rodgers owns a property tax consulting firm that provides services to residential, commercial and industrial property owners in Pennsylvania and Ohio. As part of those services, Rodgers contacts property owners that he believes have an overvalued real property assessment for tax purposes. To promote his services, Rodgers provides prospective clients with a brochure which states that he has assisted property owners in lowering their property taxes with a success rate of "almost 100%." Through his solicitations, Rodgers obtained numerous clients for which he prosecuted property tax appeals.

Once a client agrees to employ Rodgers' services, two agreements are executed. In the first agreement, which is entitled a "Consultant–Agency Agreement," the client agrees to engage Rodgers as an agent and consultant in the preparation of a real estate assessment appeal before the County Board of Property Tax Assessment Review [Board] and the Court of Common Pleas. Additionally, the property owner grants Rodgers a "limited power of attorney" to act as a "lawful attorney in fact and on [the property owner's] behalf do and perform certain matters and things which may be proper or requisite to affectuate real estate property tax appeals" before the Board or the Court of Common Pleas.

The second agreement, called a "Commercial–Industrial Fee Agreement," sets forth the methods of compensation to Rodgers and the payment of the costs and expenses associated with pursuing the appeals. Under that agreement, Rodgers receives a specified percentage of the property owner's tax savings. Additionally, Rodgers requires the property owner to submit a non-refundable processing deposit, usually in the amount of $300.00. The agreement also provides that Rodgers will obtain a survey of the market value of the property at his own cost, and in the event that a formal market value survey is needed, the property owner would pay up to $300.00 of the cost of that survey, with Rodgers agreeing to pay any fee over that amount.

In pursuing his clients' tax appeals, Rodgers completed all of the paperwork for the proceedings before the Board. Additionally, he appeared before the Board on behalf of his clients to introduce a real estate appraiser to the Board. Rodgers never testified as to the value of the property at issue, did not question any witnesses, and did not present legal arguments before the Board.

Rodgers engaged the services of a real estate appraiser, Janice Olszewski. Rodgers would request Ms. Olszewski to appraise the various real estate for purposes of the assessment appeals, and Ms. Olszewski would appear before the Board and offer her opinion regarding the value of the property at issue. As to the compensation to be received for her appraisal services, Ms. Olszewski negotiated her fees with Rodgers, and she billed and was paid directly by Rodgers. Ms. Olszewski had appraised several of the properties on two separate occasions, for which she received a lump sum payment from Rodgers.

In the event that the Board issued a decision negative to his clients, Rodgers would hire an attorney to pursue the matter to the Court of Common Pleas. The attorneys

---

[1]. While a deposition was being taken during the discovery phase before the trial court, counsel for Larry Rodgers and W.L. Rodgers Associates indicated that the two parties are the same entity. As stated in Rodgers' brief, Larry Rodgers is a sole proprietor t/d/b/a W.L. Rodgers Associates. For purposes of clarity, they will be referred to in this Opinion in the singular person.

would then prepare and file all appeals from the Board's decision. The attorneys never had any contact with the clients, but instead, were hired by Rodgers and addressed all correspondence to Rodgers. In some instances, Rodgers paid the costs and fees associated with the appeals, and did not bill his clients for those costs and fees.[2]

Throughout the course of the appeals, Rodgers would notify the clients of the status of the proceedings. In the correspondence that he sent to his clients, Rodgers explained the procedural history of the case, including the pendency of any appeals and the bases therefor, and indicated a high likelihood of success on the merits. Furthermore, Rodgers recommended to his clients that they file a new appeal to the Board for the upcoming tax year to preserve their rights to obtain tax savings. Additionally, through the course of the appeals, Rodgers provided his clients with advice regarding the payment of real estate taxes accrued during the appeals, suggesting that his clients place the taxes in an interest bearing account or file those taxes under protest.

On June 24, 1994, the County filed a complaint in equity with the trial court, which was subsequently amended, seeking to prohibit Rodgers from participating in any of the tax appeals and from soliciting any taxpayers to represent them in those appeals. In Count I of the complaint, the County alleged that Rodgers was engaging the illegal activity of champerty and maintenance. In Count II of the complaint, the County alleged that Rodgers was engaging in the unauthorized practice of law.[3]

After the preliminary objections to the amended complaint were denied, and after the parties had engaged in discovery, the County filed a motion for summary judgment on its complaint. Rodgers countered by filing a cross-motion for summary judgment to which he attached an affidavit setting forth facts. Relying upon the pleadings, Rodgers' responses to the County's interrogatories, and the deposition testimony submitted by the County, the trial court granted summary judgment on all counts of the complaint in favor of the County and concluded that Rodgers had engaged in champerty and maintenance, as well as the unauthorized practice of law.[4] Rodgers now appeals to this Court.[5]

 Rodgers contends that the trial court erred in concluding that he had engaged in the unauthorized practice of law. He argues that, under the authority granted to him via the Westmoreland County Assessment Appeal Rules and Regulations (County Rules), he was authorized to assist his clients in preparing their tax appeals and to represent his clients before the Board. Since he had obtained written authorization from his clients to appear for them in front of the Board, Rodgers argues that the County Rules specifically authorized him to do so.[6]

2. One of Rodgers' clients, Trevor Young, testified that he never received any bill from Rodgers for attorney's fees, costs, or filing fees. Additionally, in his response to the County's interrogatories, Rodgers admitted that he had paid the filing fees and costs associated with the appeals for some of his clients.

3. In Count III of its complaint, the County alleged that the attorney hired by Rodgers for the tax appeals was aiding and abetting Rodgers' champerty and maintenance and his unauthorized practice of law. The attorney subsequently withdrew from the tax cases and has not appealed the trial court's decision.

4. The trial court refused to rely upon Rodgers' affidavit on the basis that it could not support his motion for summary judgment.

5. Our scope of review from a decision of the trial court granting a motion for summary judgment is limited to determining whether the trial court

committed an error of law or abused its discretion. *York v. Schaefer Temporary Services, Inc.*, 667 A.2d 495 (Pa.Cmwlth.1995). In making this determination, this Court must examine the record, including pleadings and depositions, if any, answers to interrogatories, admissions on file and supporting affidavits in the light most favorable to the non-moving party. *Zearfoss v. Frattaroli*, 435 Pa. Super. 565, 646 A.2d 1238 (1994). Summary judgment should only be granted if there is no genuine issue as to a material fact and it is evident that the moving party is entitled to judgment as a matter of law. *Id.*

6. Rodgers contends that he did not represent his clients in the legal sense, but instead, stood in his client's shoes before the Board. In actuality, by introducing the testimony of the certified appraiser, Rodgers acted as the master of ceremonies of the proceedings before the Board.

Section 4(b) of the County Rules specifically provides that:

(b) *AUTHORIZED REPRESENTATIVE:* When an aggrieved party *is unable to appear* at an appeal hearing, they may be represented *by another party*, other than an attorney, as long as the other party has written evidence of authorization signed by the aggrieved party. *Only attorneys licensed to practice in the Commonwealth of Pennsylvania will be permitted to represent clients before the board.*

(Emphasis added). Contrary to Rodgers' contentions, and for the reasons discussed below, Section 4(b) precludes Rodgers from representing his clients before the Board.[7]

First, in interpreting this section, we must give the words and phrases contained therein their common and approved usage. *See* 1 Pa.C.S. § 1903(a). In so doing, we observe that Section 4(b) permits a party to be represented only by another party, i.e., not a disinterested individual. Furthermore, Section 4(b) allows such representation *only* when the aggrieved party is physically unable to appear at an appeal hearing. It does not authorize the aggrieved party to, in effect, contract away his or her rights to pursue the tax appeal by simply hiring another individual, who is a stranger to the appeal, to represent him or her at the hearing.

Additionally, Section 4(b) only allows attorneys licensed to practice law in the Commonwealth to represent clients before the Board. Local agencies, such as the Board, are vested with the authority to promulgate procedural rules to ensure the orderly administration of justice. 2 Pa.C.S. § 102(a); *see Jones Motor Co. v. Public Utility Commission*, 202 Pa.Super. 134, 195 A.2d 125 (1963). So long as those rules do not deprive a party of some substantive right and are not an abuse of discretion on the part of the agency, courts will not disturb those rules or the agency's exercise of its discretion. *Id.; see also Nolf v. Department of Public Welfare*, 69 Pa.Cmwlth. 398, 452 A.2d 574 (1982). A party does not have a right to be represented in administrative proceedings by an individual not licensed to practice law,[8] and therefore, an agency, in the exercise of its discretion, can preclude a non-lawyer from representing a party before it. *See McCain.* Because Rodgers is not an attorney licensed to practice in the Commonwealth of Pennsylvania as required under Section 4(b),[9] and because there has been no evidence offered to establish that the Board abused its discretion in promulgating Section 4(b), Rodgers had no authority under the County Rules to represent his clients before the Board.[10]

7. Section 4(b) was subsequently amended by the County. However, as admitted by Rodgers in his answer with new matter and motion for summary judgment, as well as in his brief before this Court, the language of Section 4(b) set forth in the text of this Opinion was in effect during the pendency of the tax appeals.

8. *Nolan v. Department of Public Welfare*, 673 A.2d 414 (Pa.Cmwlth.1995), *petition for allowance of appeal denied*, 546 Pa. 650, 683 A.2d 887 (1996); *McCain v. Curione*, 106 Pa.Cmwlth. 552, 527 A.2d 591 (1987).

9. Rodgers also argues that the trial court erred in not holding a hearing prior to granting the permanent injunction. As Rodgers admits in his brief, however, neither the Pennsylvania Rules of Civil Procedure nor common law requires the trial court to hold an evidentiary hearing prior to entering a permanent injunction. Furthermore, because our holding in this case is premised upon Rodgers' representation of his clients before the Board, unauthorized conduct under the County Rules, and because Rodgers admits that he engaged in such representation, the material fact is not at issue. Additionally, because the material fact is not at issue, we need not address Rodgers' argument that the trial court erred in refusing to consider his affidavit and in relying upon the deposition testimony of the County's witnesses in ruling on the motions for summary judgment.

10. This is not to say, however, that Rodgers' conduct would have been permitted had the Board's rules allowed him to represent his clients before it. Just as the attorney-in-fact provisions of the Probate Code, 20 Pa.C.S. §§ 5602, 5603, cannot empower an individual to engage in the unauthorized practice of law under 42 Pa.C.S. § 2524, any rules or regulations of an administrative agency likewise cannot confer the power to engage in conduct that is prohibited by that section of the Judicial Code. *Kohlman v. Western Pennsylvania Hospital*, 438 Pa.Super. 352, 652 A.2d 849 (1994), *petition for allowance of appeal denied*, 541 Pa. 640, 663 A.2d 692 (1995).

Accordingly, the order of the trial court granting summary judgment in favor of the County and enjoining Rodgers from pursuing any further tax appeals on behalf of his clients or other property owners is affirmed.[11]

### ORDER

AND NOW, this 10th day of April, 1997, the order of the Court of Common Pleas of Westmoreland County at No. 5014 of 1994, dated February 26, 1996, is affirmed.

SMITH, J., dissents.

---

**11.** Because we are affirming the trial court on the basis of the Board's rule prohibiting Rodgers from representing his clients before the Board, we need not address Rodgers' arguments regarding champerty and maintenance and the County's standing to raise that doctrine.