Dutchland Tours, Inc., Appellant, *v.* Commonwealth of Pennsylvania, Pennsylvania Public Utility Commission, Appellee, and John N. Thomas, Intervening Appellee.

Conestoga Transportation Company and Conestoga Tours, Inc., Appellants, *v.* Commonwealth of Pennsylvania, Pennsylvania Public Utility Commission, Appellee, and John N. Thomas, Intervening Appellee.

2

Argued February 3, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*James D. Campbell, Jr.,* with him *Ernest S. Burch,* and *Nauman, Smith, Shissler & Hall,* for appellant, Dutchland Tours.

*John P. Kershner,* with him *Barley, Snyder, Cooper & Mueller,* for appellant, Conestoga.

*Melville G. M. Walwyn,* with him *Edward Munce,* Acting Counsel, and *Alfred N. Lowenstein,* Assistant Counsel, for appellee.

*John W. Burge,* with him *M. Elvin Byler,* and *Wenger and Byler,* for intervening appellee.

OPINION BY JUDGE CRUMLISH, JR., May 5, 1975:

This is an appeal by protestants from an order of the Pennsylvania Public Utility Commission (PUC) granting to John N. Thomas (Thomas) a certificate of public convenience to "transport as a common carrier, persons who are guests of the Willow Valley Motor Inn, on special excursions and tours or sightseeing trips, from the said Willow Valley Motor Inn, located in the Township of West Lampeter, Lancaster County, to points of political, social, economic, cultural and historic interest of the Mennonite religious sect in Lancaster County."

On September 15, 1972, Thomas filed an application for a certificate of public convenience to conduct a sightseeing tour for guests of his family-owned motel to farms and markets operated by Thomas and other points of interest related to the Mennonite culture in Lancaster County. The tour, which Thomas proposes to offer to his motel guests as a "package deal" with food and accom-

4

modations,[1] had been run for two years prior to the application, and Thomas pleaded guilty to unauthorized service after submitting the application. Protests were duly filed to the application by Dutchland Tours, Inc., Conestoga Transportation Company, and Conestoga Tours, Inc. which conduct and sell tickets for sight-seeing tours in the same area of operation proposed by Thomas. The matter proceeded to hearing and on August 17, 1973, PUC entered its short-form order granting the certificate of public convenience noted above. Protestants filed appeals in this Court, Thomas was granted leave to intervene as a party appellee, and the cases were consolidated for argument and disposition. The PUC thereafter issued its long-form order affirming the above certificate of public convenience. On April 17, 1974, this Court vacated the long-form order and remanded the matter to PUC for the purpose of entering specific findings of fact in support of its order as required by Section 1005 of the Public Utility Law, Act of May 28, 1937, P.L. 1053, 66 P.S. §1395. *Dutchland Tours, Inc. v. Pennsylvania Public Utility Commission,* 13 Pa. Commonwealth Ct. 54, 318 A.2d 394 (1974).

On remand, PUC reaffirmed its long-form order approving Thomas' application and granting the same certificate of public convenience, and entered the following findings of fact subject to our review:[2]

"1. That applicant's financial situation renders him fit for obtaining a certificate of public convenience.

---

1. The record is unclear as to exact nature or amount of the charge for the tour prior to the application, but it is clear that, if the instant certificate of public convenience is upheld, Thomas will charge a fee of $5.00 for the tour, incorporated into either a "package deal" or paid separately by motel guests.

2. It must be noted that the PUC long-form order entered upon remand amplifies upon the findings of fact quoted below, and this discussion will be referred to subsequently as explanative of the bases of PUC's decision.

"2. At the time the instant application was filed none of the tours offered in the area emphasized the *Mennonite* culture.

"3. The tours offered by protestant Conestoga Tours, Inc. emphasized the *Amish* culture.

"4. The record does not show that applicant's action in operating tours for two consecutive years without authority was in willful or open defiance of this Commission.

"5. Protestants do not in fact offer a four hour tour as advertised, since one hour and 40 minutes of each tour is spent picking up passengers from various motels in the area.

"6. Guests of the Willow Valley Motor Inn have expressed their desire for more information regarding the Mennonite religious sect and have asked numerous questions regarding Mennonite life and culture.

"7. The Willow Valley Motor Inn is located in southern Lancaster County, a considerable distance from most of the other locations where tour passengers are picked up by the protestants, and a considerable distance from the sites visited by the tours run by protestants. This sometimes results in unusually long waiting periods for tour buses by guests of the Willow Valley Motor Inn.

"8. The Commission received no protests or complaints from protestants on applicant's unauthorized service.

"9. Protestants cited no economic disadvantages to themselves during the period of applicant's unauthorized service.

"10. Tours were delayed and sometimes cancelled because of protestants' policy that tours would run only with a minimum of four passengers.

"11. That even though the protestants had the authority and equipment to offer tours as proposed by applicant and even though they testified that they

were willing to offer such tours, they were in fact not offering such tours." (Emphasis original.)

Protestants have renewed their appeals to this Court, again raising two questions for our determination:

1) Is there substantial evidence to support the PUC's finding of a need for the proposed service which is not adequately served by the existing service of protestants?;

2) Is the order of the Commission authorizing Thomas to transport guests of his hotel "to points of political, social, economic, cultural, and historical interest of the Mennonite religious sect in Lancaster County" supported by the evidence of the destination points proposed by the applicant, or is the operating authority so over-broad and vague so as to be void?

The parties essentially agree on the applicable law and scope of this Court's review in appeals of this nature; they understandably disagree as to the application of these principles to the evidence before PUC. In considering an application for a certificate of public convenience, Section 203 (a) of the Public Utility Law, 66 P.S. §1123 (a), requires PUC to determine whether or not "the granting of such certificate is necessary or proper for the service, accommodation, convenience, or safety of the public." An applicant for an initial certificate of public convenience has the burden of proving a need for the proposed service, the inadequacy of the existing service, and the capacity of the applicant to satisfactorily meet this need. *Byerly v. Pennsylvania Public Utility Commission,* 440 Pa. 521, 270 A.2d 186 (1970); *Seiferd v. Pennsylvania Public Utility Commission,* 12 Pa. Commonwealth Ct. 85, 315 A.2d 320 (1974). In establishing "public need", it is not necessary to prove an absolute necessity or present demand for the service in every point of the territory proposed, but it is incumbent upon the applicant to prove that such service is reasonably necessary for the accommodation and convenience of the public. *McNaughton Bros., Inc. v. Pennsylvania Public Utility Commis-*

*sion,* 2 Pa. Commonwealth Ct. 319, 278 A.2d 186 (1971). Having made that determination and entered an order in favor of the applicant in the instant case, we may not disturb the PUC order absent a violation of constitutional rights, an error of law, or a lack of substantial evidence to support its findings. Section 1107 of the Public Utility Law, *as amended,* 66 P.S. §1437; *Seiferd v. Pennsylvania Public Utility Commission, supra.* Substantial evidence is such relevant and competent evidence having a rational probative force which a reasonable mind might accept as adequate to support a conclusion. *York v. Public Utility Commission,* 3 Pa. Commonwealth Ct. 270, 281 A.2d 261 (1971), *aff'd* 449 Pa. 136, 295 A.2d 825 (1972). Although need and the inadequacy of existing service has been traditionally established by proof of requests for the proposed service, *see Trantor v. P.U.C.,* 4 Pa. Commonwealth Ct. 585, 288 A.2d 837 (1972), "[n]o particular type of evidence is required; the only requirement is that the evidence as a whole be legally sufficient to support the order of the [PUC]. Pittsburgh & Lake Erie Railroad Co. v. Pennsylvania Public Utility Commission, supra, 170 Pa. Superior Ct. 411, 420, 85 A.2d 646." *D. F. Bast, Inc. v. Pennsylvania Public Utility Commission,* 397 Pa. 246, 250, 154 A.2d 505, 507-508 (1959).

PUC in the instant case made the requisite findings of public need and inadequacy of the existing service based upon a showing by Thomas that:

1) none of the existing tours emphasize the Mennonite religious culture in the area to be served although Mennonites outnumber Amish 20,000 to 8,000 in Lancaster County;

2) "[g]uests of the Willow Valley Motor Inn have expressed their desire for more information regarding the Mennonite religious sect and have asked numerous questions regarding Mennonite life and culture" (Finding of Fact #6);

3) the existing tours do not stop at the River Corner Mennonite Church, Hans Herr House, Meadow Brook

Market, and the other points of interest related to the Mennonite culture to be included in Thomas' tour;

4) the geographic location of the Willow Valley Motor Inn is such that guests joining protestants' tours there must spend considerable wasted travel time in reaching the other pick-up points; and

5) Thomas' uncertified operation of the tour for two years which the PUC found to be *not* a willful and open defiance of the PUC, and thus competent evidence of need. It is immediately apparent that each of these factors, aside from 2) and 5), might tend to prove the inadequacy of protestants' service, but they do not prove a *need* for the service proposed by Thomas. As to 2), an unfulfilled demand by the public for more information regarding the Mennonite culture would be an indicia of public need, but this finding is not supported by substantial evidence in the present record. The *only* evidence in this respect is the following testimony by the applicant Thomas: "Q. You say that the purpose of transporting persons would be for offering tours? A. This is right. Folks are wanting to know more about our people,[3] and we do take the people on tours." We hold that this statement is not sufficient evidence of public need, and certainly does not meet Thomas' burden of proving need.

The crux of the question of whether Thomas has established a public need for his service is, thus, whether PUC could properly consider the two years of unauthorized service by Thomas as competent evidence of need. The determinative criteria in this respect is whether the unauthorized service was operated in good faith, or in-willful disregard of a carrier's certificate limitations. *Bunting-Bristol Transfer, Inc. v. Pennsylvania Public Utility Commission*, 418 Pa. 286, 210 A.2d 281 (1965); *Johnstown-Pittsburgh Express, Inc. v. Public Utility Commission*, 5 Pa. Commonwealth Ct. 521, 291 A.2d 545 (1972); *Tranter v. Pennsylvania Public Utility Commis-*

---

3. Thomas is a member of the Mennonite sect.

*sion, supra.* PUC in the instant case found that Thomas' illegal operations for two consecutive years prior to his application were not "in willful or open defiance of this Commission." Upon a review of the record, however, we must again conclude that there is no evidence to support this finding. To the contrary, Thomas admitted to his illegal operations and his intention to continue the tours even after filing an application for a certificate of public convenience. In this application, he took an oath wherein he stated that he proposed to furnish service upon receipt of a certificate of public convenience. Yet, only weeks before the hearing on his application, Thomas pleaded guilty to a violation of the Public Utility Law. Upon these facts, PUC could not conclude as a matter of law that Thomas' violations were in good faith, and PUC thus erred in considering these operations as evidence of need. *Bunting-Bristol Transfer, Inc. v. Pennsylvania Public Utility Commission, supra; D. F. Bast, Inc. v. Pennsylvania Public Utility Commission, supra.*

Having concluded that Thomas failed to meet his burden of proving a need for the certificate of public convenience granted by PUC, we need not consider the other issue raised by protestants.

## ORDER

AND NOW, this 5th day of May, 1975, the appeal of protestants is sustained and the order of the Pennsylvania Public Utility Commission of May 29, 1974 granting to John N. Thomas a certificate of public convenience is reversed and said certificate is vacated.

---

DISSENTING OPINION BY JUDGE KRAMER:

While I agree with the analysis of the law in the majority opinion, my review of the record in this case permits me to conclude that it adequately supports the findings and conclusions of the Pennsylvania Public

Utility Commission. This is not the usual application requesting permission to operate a purely public tour transportation business; it is an application (very restrictive in nature) to transport, as a common carrier, *individuals who are guests at the Willow Valley Motor Inn* on special excursions, tours and sightseeing trips. From my point of view, the record supports the PUC's grant of the very restrictive certificate of public convenience, authorizing what appears to be more an additional motel service than a public tour business. I would affirm the order of the PUC.

Judge BLATT joins in this dissent.