Commonwealth of Pennsylvania, Pennsylvania Public Utility Commission, and Instant Communication, Inc., Intervening Appellee, *v.* Pennsylvania Radio Telephone Corporation, Appellant.

592

Argued June 5, 1975, before President Judge BOWMAN and Judges KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT. Judge CRUMLISH, JR. did not participate.

*Lewis S. Kunkel, Jr.,* with him *Thomas B. Schmidt, III,* and *Pepper, Hamilton & Scheetz,* for appellant.

*Susan M. Shanaman,* Assistant Counsel, with her *Peter W. Brown,* Counsel, for appellee.

*M. Mark Mendel,* with him *Harris T. Bock,* and *Mendel and Schwartz, P.C.,* for appellee.

OPINION BY JUDGE ROGERS, August 1, 1975:

This is the appeal of Pennsylvania Radio Telephone Corporation (PRTC) from an order of the Pennsylvania Public Utility Commission (Commission) entered November 6, 1974 granting to Instant Communication, Inc. (Instant) a certificate of public convenience to provide mobile radio-telephone common carrier service in the City of Reading, Berks County, and vicinity.

On April 9, 1973, pursuant to Section 203 of the Public Utility Law, Act of May 28, 1937, P.L. 1053, *as amended*, 66 P.S. §1123, Instant filed for a certificate of public convenience to provide three types of mobile radio-telephone common carrier service in the Reading area: tone-only paging, tone and voice paging, and mobile service telephone. Protests were filed by PRTC and by Denver and Ephrata Telephone and Telegraph Company, Radio Broadcasting Company, and Conestoga Telephone and Telegraph Company (Conestoga). The protest of Radio Broadcasting Company was subsequently withdrawn.[1] Hearings were conducted before an examiner of the Commission on four different occasions between February and July of 1974. Instant, PRTC and Conestoga Telephone and Telegraph Company each presented the testimony of numerous witnesses and documentary evidence. From the order of the Commission granting Instant the requested certificate, only PRTC appealed. Instant was granted leave to intervene in the appeal.

Our limited scope of review in these matters is expressly set forth in the Public Utility Law. Section 1107, 66 P.S. §1437 provides pertinently:

---

1. In addition, by stipulation and agreement of Denver and Ephrata Telephone and Telegraph Company and Instant, Denver's protest was also withdrawn conditioned on the agreement of Instant, on record, that it would not furnish mobile radio common carrier service to customers within the certificated area of Denver. The order of the Commission, as modified, reflects this agreement.

"The order of the Commission shall not be vacated or set aside, either in whole or in part, except for error of law or lack of evidence to support the finding, determination, or order of the Commission, or violation of constitutional rights."

*See Seiferd v. Pennsylvania Public Utility Commission*, 12 Pa. Commonwealth Ct. 85, 315 A. 2d 320 (1974). Unless the Commission's order and findings are totally without support in the record, based on an error of law or unconstitutional, we are without authority to reverse. The Legislature did not intend that the courts should weigh the factors entering in the granting of a certificate of public convenience. *Johnstown-Pittsburgh Express, Inc. v. Pennsylvania Public Utility Commission*, 5 Pa. Commonwealth Ct. 521, 525, 291 A.2d 545, 547-548 (1972).

Section 203 (a), *as amended,* 66 P.S. §1123 (a), of the Public Utility Law provides that a certificate of public convenience may be granted "only if and when the commission shall find or determine that the granting of such certificate is necessary or proper for the service, accommodation, convenience, or safety of the public. . . ." All parties here recognize that the applicant bears the burden of proving (1) a need for the proposed service, (2) the inadequacy of the existing service, and (3) the capacity, both financial and technical, of the applicant to meet the need in satisfactory fashion. *See Dutchland Tours, Inc. v. Pennsylvania Public Utility Commission*, 19 Pa. Commonwealth Ct. 1, 337 A.2d 922 (1975). PRTC challenges the proofs offered by Instant as to all three of these requisites and, in addition, charges the Commission with failure of its duty to make sufficiently specific findings of fact.

As for the last objection, while the Commission's order does not recite findings seriatim, its discussion sufficiently refers to factual matters accepted by the Commission and supportive of its conclusions with respect to the issues

of need and inadequacy of existing services. Numbered findings on the issues are not required by the statute. *Pennsylvania Railroad Company v. Pennsylvania Public Utility Commission,* 181 Pa. Superior Ct. 343, 352, 124 A. 2d 685, 690 (1956). *See also Clemmer v. Pennsylvania Public Utility Commission,* 207 Pa. Superior Ct. 388, 217 A. 2d 800 (1966).

As to the substantive challenges raised by PRTC, the matters of need for the service proposed and of the inadequancy of present service may be disposed of together. Our careful examination of the record has convinced us that Instant offered sufficient proof of demand for the services proposed and of the inadequancy of similar services provided by PRTC. The proof of need consisted of the testimony of a number of Reading businessmen who stated that they would be interested either in obtaining Instant's services or in receiving additional information concerning those services; the results of examinations and studies of the Reading area by the principals of Instant showing a market potential for its radio-telephone communication services; and the testimony of a certified public accountant that numerous Reading businessmen known to him would desire Instant's services. As to the alleged inadequacy of services presently provided by PRTC and others, Instant relied on evidence which sufficiently demonstrates the failure of those presently in the field aggressively to explore the potential for radio-telephone communications services in the area and the limited and incomplete range of services presently provided. Upon the evidence presented, the Commission was satisfied that Instant had met its burden both as to demand and the inadequacy of present service. An applicant for a certificate is "not required to demonstrate actual proof of necessity or propriety so long as the proposed service is reasonably necessary for the accommodation or convenience of the public." *Carl R. Bieber, Inc. v. Public Utility Commission,* 3 Pa. Com-

monwealth Ct. 236, 240, 281 A. 2d 351, 354 (1971). The Commission's decision on these two points is supported in the record and we may not disturb it.

The Commission stated the following with respect to Instant's technical and financial capability: "This Commission is not in a position to make a determination as to the technical qualifications of applicant and furthermore, this matter is rightfully within the purview of the FCC. As to applicant's financial responsibility, it appears from the record that applicant does not lack the necessary financial qualifications to engage in its proposed radio-telephone common carrier operations."

PRTC asserts that the Commission improperly discharged its responsibility to assess the technical ability of Instant as it related to the quality of services it plans to provide to the public. We disagree. Implicit in the Board's opinion in support of its order is approval of the level of technical services and of the equipment which Instant proposed to provide, concerning which Instant offered substantial evidence. The Commission properly refused to decide whether appropriate radio band frequencies were or would be available under the regulations of the Federal Communications Commission. We do not believe that it was obliged to do so and conclude that its order, expressly conditioning the grant of the certificate on FCC authorization to broadcast, properly disposed of this objection.

PRTC's objection to Instant's proof of its financial ability to undertake the proposed service is valid. Instant's evidence consisted of a showing of a bank balance of $2000, the expressed willingness of its president, Stephen Kircos, to provide from his private means $40,000 for first year operating expenses,[2] and a vague

---

2.  Considerable financial information concerning another corporation, Instant Communications, Inc. of Michigan, was adduced. Mr. Kircos is also president of the Michigan Corporation and this

reference to a "letter of credit" in the amount of $40,000. Neither Mr. Kircos's expression of willingness to support Instant, if reduced to writing, nor the letter of credit appear in the record. These proofs do not, singly or in combination, constitute substantial evidence upon which the Commission could base a finding that Instant was financially able to embark on the enterprise it proposed. We are not, however, impelled simply to reverse the Commission's order. Instant, having sufficiently proved a need for its services and the inadequacy of present services, should, we believe, be afforded the opportunity to establish by adequate proofs that it is financially capable of establishing and pursuing the mobile radiotelephone common carrier service in Reading.

PRTC finally argues that, even if Instant had carried its burden as to demand, inadequacy of present services, and financial and technical ability, the Commission abused its discretion in granting the application because it, PRTC, will inevitably fail if forced to compete with Instant. We need only note that this "[would be] unfortunate, if true, but the extent to which there shall be competition is the administrative question which must be left to the discretion of the Commission." *H. J. Gongaware & Sons v. Public Utility Commission*, 163 Pa. Superior Ct. 9, 11, 60 A. 2d 364, 365 (1948).

ORDER

AND NOW, this 1st day of August, 1975, the order of the Pennsylvania Public Utility Commission dated November 6, 1974, as modified, granting Instant Communications, Inc. a certificate of public convenience is hereby reversed and the record is remanded to the Commission for further proceedings consistent with this opinion.

---

evidence seems to have been offered to show that Mr. Kircos has had success in the radio communications business.