In Re: Gettysburg Tours, Inc., Petitioner *v.* Pennsylvania Public Utility Commission, Respondent. S. Wolf's Sightseeing Tours, Inc., Intervenor.

Argued February 9, 1979, before Judges Rogers, Blatt and DiSalle, sitting as a panel of three.

*James D. Campbell, Jr.,* with him *Nauman, Smith, Shissler & Hall,* for petitioner.

*Robert A. Christianson,* Assistant Counsel, with him *Alfred N. Lowenstein,* Assistant Counsel, and *Kathleen Herzog Larkin,* Chief Counsel, for respondent.

*R. James Reynolds, Jr.,* with him *Lewis S. Kunkel, Jr.; Pepper, Hamilton & Scheetz; John R. White* and *Campbell & White,* for intervening respondent.

OPINION BY JUDGE DISALLE, May 2, 1979:

Gettysburg Tours, Inc., (Protestant) has appealed from the order of the Pennsylvania Public Utility Commission (PUC) granting to S. Wolf's Sightseeing Tours, Inc., (Applicant) a certificate of public convenience permitting Applicant to "transport, as a common carrier, groups and parties of persons on special excurstions [sic] and tours and sightseeing trips from the borough of Gettysburg and Township [sic] of Straban and Cumberland, Adams County, to the Gettysburg Battlefield in the borough of Gettysburg and the townships of Straban and Cumberland, Adams County." Protestant raises two specific issues on appeal: (1) whether the PUC may grant a certificate of public convenience in the absence of a showing that the existing service is inadequate;[1] and (2) whether the PUC may grant a certificate of public convenience where evidence indicates that an applicant is unfit to provide increased service.

Given the narrowness of the issues raised, a full rendition of the facts is unnecessary. Suffice it to say that both Applicant and Protestant had been providing tour service of the Gettysburg Battlefield for some time, although the type of tour, the vehicles used, as well as the areas served, differed in certain respects.

---

[1] It is admitted that the PUC made no specific finding as to the adequacy of existing service.

Applicant sought to expand its existing, authorized service so as to permit it to pick up passengers in the borough of Gettysburg and two adjacent townships. The Protestant challenged Applicant's proposed expansion.

The PUC found that Applicant established that there was a public need for additional tour service in the area of Applicant's proposed expansion and that the expansion, therefore, was necessary and proper for the service, accommodation and convenience of the public. The PUC, while noting that Applicant desired to make its tour service more accessible to a larger number of patrons, found that the addition of Applicant's proposed service would offer the public a meaningful "choice" in available tour service. Not only did Applicant's tour differ from Protestant's with respect to the route and historical emphasis, Applicant's vehicles were air-conditioned while Protestant's were not. Considering market dynamics, the PUC also found that Applicant's proposed expansion would not result in undue economic deprivation to Protestant but rather would spur "healthy economic competition" between the parties. Finally, the PUC did not believe that five instances of illegal rendition of service, for which Applicant had been summarily cited and fined, necessarily precluded Applicant from expanding its service. The PUC found that the public need evidenced by Applicant for the services sought outweighed any prejudice attributable to Applicant as a result of its past transgressions.

Turning to Protestant's first argument, we note that Section 203(a) of the Public Utility Law (Law), Act of May 28, 1937, P.L. 1053, *as amended, formerly* 66 P.S. §1123(a), repealed by the Act of July 1, 1978, P.L.     , No. 116 (*see* 66 Pa.C.S. §1103(a)), provides that "[a] certificate of public convenience shall be granted by order of the commission, only if and when

the commission shall find or determine that the granting of such certificate is necessary or proper for the service, accommodation, convenience, or safety of the public." Our Supreme Court has held that this requirement

> is met by showing that the proposed service is reasonably necessary for the accommodation or convenience of the public, or by establishing that existing service does not satisfy the public need and that the proposed service would tend to correct or substantially improve that condition.

*D. F. Bast, Inc. v. Pennsylvania Public Utility Commission,* 397 Pa. 246, 250, 154 A.2d 505, 508 (1959). *Accord, Morgan Drive Away, Inc. v. Pennsylvania Public Utility Commission,* 16 Pa. Commonwealth Ct. 293, 328 A.2d 194 (1974) and *Zurcher v. Pennsylvania Public Utility Commission,* 173 Pa. Superior Ct. 343, 98 A.2d 218 (1953). Consistent with this pronouncement, our Court has had occasion to say that no provision exists in the Law, which would require an applicant, in all instances, to prove the "inability" or inadequacy of those providing existing service to meet the public need. *Morgan Drive Away, Inc., supra* at 299, 328 A.2d at 197. Based on this authority, it seems clear that the PUC was not required to make a specific finding as to the adequacy of existing service so long as it found, as it did in the instant case, that an applicant had established that the grant of rights sought was necessary and proper for the service, accommodation and convenience of the public.

We are not unmindful, however, of the existence of apparently countervailing authority which would require an applicant for a certificate of public convenience to specifically prove that the existing service was inadequate. *See e.g., Byerly v. Pennsylvania Public Utility Commission,* 440 Pa. 521, 270 A.2d 186

(1970) and *Applications of L.P. Transportation, Inc.*, 25 Pa. Commonwealth Ct. 412, 359 A.2d 848 (1976). While we believe that the adequacy of existing service is generally one factor to be considered with reference to such a determination, we are satisfied that where, as here, an applicant's proposed service is of a different nature than that being presently performed by a protestant, a finding that the present service is inadequate is unnecessary.

Our Supperior Court has considered this very question and has held that where

> the evidence indicates that the proposed service is different from the [existing] service, the failure of the commission to make a specific finding that the existing service is inadequate does not vitiate its order. In such case, considerations are important which do not exist when the applicant seeks authorization for service identical in type and route to that already existing.

*Pennsylvania Railroad Co. v. Pennsylvania Public Utility Commission*, 199 Pa. Superior Ct. 158, 167, 184 A.2d 111, 116 (1962). The Superior Court was simply unwilling to hold the PUC to the

> rigid rule that if there be one carrier supplying service between certain points, and that service is ordinarily adequate, that it is obliged invariably to refuse a certificate to other applicants including those using other methods of carriage. . . . From the testimony before us, it can fairly be taken that some persons prefer auto-bus service to trolley and that others by reasons of its freedom of motion are better served by the former than the latter and that the busses to some degree at least relieve the congestion at 'rush' hours.

*Id.* at 168, 184 A.2d at 117 *quoting Pottsville Union Traction Co. v. Public Service Commission,* 67 Pa. Superior Ct. 301, 303 (1917).[2]

We feel likewise constrained to say that where, as here, the expansion of service proposed by Applicant has been found by the PUC to be necessary and proper, largely on the basis of a determination that Applicant's proposed service is different from the existing service, and will provide a larger part of the public with a meaningful "choice" as to the available modes of service, the absence of a specific finding of inadequacy of existing service will not vitiate the PUC's order. We believe, therefore, that those cases which would require such a showing are factually distinguishable from the present case.

With regard to Protestant's remaining argument concerning Applicant's fitness,[3] the PUC found as follows:

> The Commission has considered the evidence which indicates applicant has rendered five trips outside the scope of authority. The applicant was summarily cited and has paid a fine in each instance. We are not convinced that the five instances of illegal rendition of service does preclude the applicant from enlarging its authority. There is no evidence to indicate that applicant does not now render a satisfactory battlefield tour service, nor is there evidence to

---

[2] Specifically, the court emphasized at least two of the same differences which were noted by the PUC in the present case: different route and accessibility to a larger group of persons.

[3] Protestant emphasizes that the PUC made no specific finding of fact concerning Applicant's fitness. This Court has found that such is not necessary as long as the factual questions are addressed in the PUC's general discussion. *Pennsylvania Public Utility Commission v. Pennsylvania Radio Telephone Corp.,* 20 Pa. Commonwealth Ct. 591, 342 A.2d 489 (1975).

indicate that the applicant will not continue to provide satisfactory service. We believe the public need in this case outweighs any prejudice befalling the applicant due to the illegal service rendered.

Protestant contends that the PUC is precluded from making such a determination where evidence of unfitness exists in the records, citing such cases as *Bunting Bristol Transfer, Inc. v. Pennsylvania Public Utility Commission,* 418 Pa. 286, 210 A.2d 281 (1965), *D. F. Bast, Inc., supra,* and *Dutchland Tours, Inc. v. Pennsylvania Public Utility Commission,* 19 Pa. Commonwealth Ct. 1, 337 A.2d 922 (1975).

We disagree. The cases upon which Protestant relies deal with the question of whether the PUC, in adjudging the existence of a public need for some proposed service, can properly consider evidence of illegal or unauthorized activity on the part of an applicant. The cases stand collectively for the proposition that, in the *absence* of other evidence, evidence relating to illegal or unauthorized rendition of service may support the PUC's granting of a certificate of public convenience *only* under certain narrowly defined circumstances (as, for example, where unauthorized service was rendered by a carrier who believed, in good faith, that such service was authorized). Since the PUC's determination in the instant case *in no way* relies on evidence of illegal or unauthorized rendition of service, but rather is buttressed by ample evidence relating to admittedly legal and authorized rendition of service,[4] we have no difficulty in concluding that Protestant's

---

[4] The record abounds with evidence relating to the satisfactory nature of Applicant's present service as well as the benefits to be derived from its proposed expanded service. While contrary evidence exists, it remains for the PUC, as fact finder, to resolve such conflicts in the evidence. Our function is limited to determining whether substantial evidence supports the PUC's ultimate conclusion.

reliance on the cited authority is misplaced. We believe, therefore, that the Applicant's admitted illegal rendition of services did not preclude the granting of a certificate of public convenience under circumstances where, as here, the PUC's decision is otherwise supported by substantial evidence.

### ORDER

AND Now, this 2nd day of May, 1979, the order of the Pennsylvania Public Utility Commission dated December 13, 1977, granting a certificate of public convenience to S. Wolf's Sightseeing Tours, Inc., is hereby affirmed.