Samuel J. Lansberry, Inc., Petitioner *v.* Pennsylvania Public Utility Commission, Respondent. Paul E. Davidson et al., Intervenors.

Argued December 18, 1981, before Judges Rogers, Blatt and Williams, Jr., sitting as a panel of three.

*Herbert R. Nurick, McNees, Wallace & Nurick,* for petitioner.

*Eric A. Rohrbaugh,* Assistant Counsel, with him *Joseph J. Malatesta, Jr.,* Chief Counsel, and *Alfred N. Lowenstein,* Deputy Chief Counsel, for respondent.

*J. Bruce Walter, Rhoads, Simon & Hendershot,* for intervenors.

Opinion by Judge Blatt, May 3, 1982:

Samuel J. Lansberry, Inc. (protestant) appeals an order of the Pennsylvania Public Utility Commission

(PUC) granting the intervenor, Paul E. Davidson (applicant) a certificate of public convenience. The certificate granted, *inter alia*, authority for the applicant to transport coal from points in Clearfield and Centre Counties to points in Chester County.[1]

On October 6, 1978, the applicant filed an application with the PUC seeking authority:

1. To transport, as a Class D carrier, coal, for Half-Way Coal Yard, t/a S&D Trucking Co., from points in the Townships of Boggs, Burnside and Snow Shoe, Centre County, and the Townships of Brady, Knox and Lawrence, Clearfield County, to points in the City of Erie, Erie County, and the City of New Castle, Lawrence County.

2. To transport, as a Class D carrier, coal, for Half-Way Coal Yard t/a S&D Trucking Co., from points in the Townships of Brady, Knox and Lawrence, Clearfield County, to points in the Townships of Allen and Upper Mount Bethel, Northampton County.

3. To transport, as a Class D carrier, coal for Half-Way Coal Yard, t/a S&D Trucking Co., from *points in the Townships of Boggs, Burnside and Snow Shoe, Centre County,* and the Townships of Brady, Knox and Lawrence, Clearfield County, to points in the Townships of Charlestown and East Whiteland, Chester County.

4. Provided that no service shall be provided hereunder for the account of Erickson of Johnstown, Inc.

---

[1] The Warner Company owns coal operations in the townships of Boggs, Burnside, and Snow Shoe, Centre County, from which it ships coal to a lime producing plant which it also owns and which is located on the border and therefore in both the townships of Charlestown and East Whiteland, Chester County.

5. Provided that no right, power or privilege is granted to provide transportation from the facilities of Bradford Coal Co., Island Creek Co., and Coal Hill Mining Co., Inc., in Clearfield County to points in the counties of Berks, Chester, and Northampton.

The protestant, among other carriers, filed protests to this application, and the case was referred to an Administrative Law Judge (ALJ). After holding a hearing, the ALJ granted the application in an August 15, 1980 decision except for the above-emphasized portion of the third paragraph which sought authority to transport from points in the Townships of Boggs, Burnside, and Snow Shoe, Centre County, to points in Chester County. Due to this exclusion, the applicant filed exceptions on September 9, 1980, and the protestant filed a reply on September 25, 1980. These exceptions, however, were not ruled upon by the ALJ but rather were acted upon by the PUC in an order adopted December 4, 1980, and entered February 3, 1981. Such corrected order reversed[2] the ALJ's denial of authority to the applicant to transport coal from the points in Centre County to the points in Chester County enumerated *supra,* but otherwise affirmed his decision.

Before us[3] the protestant challenges only that segment of the PUC's corrected order which grants the applicant authority to transport from points in Centre County to points in Chester County.

---

[2] Commissioner Cawley filed a dissenting opinion in which he stated that the ALJ was correct in denying the applicant's authority to transport coal from Centre to Chester County.

[3] Our scope of review of an order of the PUC is limited to a determination of whether or not an error of law has been committed, or whether or not the necessary findings, the determination or the order were supported by substantial evidence. *Makovsky Bros., Inc. v. Pennsylvania Public Utility Commission,* 55 Pa. Commonwealth Ct. 435, 423 A.2d 1089 (1980).

The protestant argues first that the PUC, in entertaining the exceptions and adopting its order, violated the provisions of Section 332(h) of the Public Utility Code (Code), 66 Pa. C. S. §332(h), in that in doing so it precluded the ALJ from ruling on the exceptions. Section 332(h) of the Code, in pertinent part, provides:

> (h) Exceptions and appeal procedure.—Any party to a proceeding referred to an administrative law judge under section 331(b) may file exceptions to the decision of the administrative law judge within 15 days after such decision is issued, in a form and manner to be prescribed by the commission. The administrative law judge shall rule upon such exceptions within 30 days after filing. Any party to the proceeding may appeal to the commission from the ruling of the administrative law judge on the exceptions within 15 days after such ruling is issued.

The PUC counters in its brief that Section 332(h) is only directory and not mandatory.[4] The applicant, however, argues further that the protestant failed to state or establish how, if at all, it was harmed or how its rights were affected by the PUC's ruling on the exception in question.

We believe that, in order to dispose of the protestant's first argument, we need not determine here whether or not Section 332(h) is mandatory or directory because the record reveals that the protestant failed to show any harm or prejudice to its rights by the PUC's action on the exception. If there was an

---

[4] This question is unsettled under existing case law, but in *Philboro Coach Corp. v. Pennsylvania Public Utility Commission*, 55 Pa. Commonwealth Ct. 46, 423 A.2d 751 (1980), we commented that Section 332(h) concerns only the mode of procedure and does not affect any substantive rights of the litigants.

error here, therefore, it was a harmless one, and it is "axiomatic that we will not disturb a judgment, order, or decree on appeal for harmless error. . . . In the present case the complained of error . . . is not reflected in the record as having caused any injury to petitioners." *Campbell v. Department of Environmental Resources,* 39 Pa. Commonwealth Ct. 624, 626, 396 A. 2d 870, 870-71 (1979) (citations omitted).

The protestant argues next that the PUC committed an error of law in granting authority to the applicant to transport coal from points in Centre County to points in Chester County because the applicant failed to establish that the existing services covering the areas concerned were inadequate, nor did the PUC require such a showing.

Section 1103(a) of the Code, 66 Pa. C. S. §1103(a), provides in pertinent part that "[a] certificate of public convenience shall be granted by order of the commission, only if the commission shall find or determine that the granting of such certificate is necessary or proper for the service, accommodation, convenience, or safety of the public." Two distinct lines of cases exist which discuss what an applicant must establish in order to carry his burden of proving his entitlement to a certificate under Section 1103. *Compare Byerly v. Pennsylvania Public Utility Commission,* 440 Pa. 521, 270 A.2d 186 (1970) *with Gettysburg Tours, Inc. v. Pennsylvania Public Utility Commission,* 42 Pa. Commonwealth Ct. 399, 400 A.2d 945 (1979).

Traditionally, under the first line of cases, as typified by our Supreme Court's decision in *Byerly*, Section 1103(a) was interpreted to require an applicant to establish both the necessity for the new service *and* the inadequacy of the existing service. *See, e.g., Applications of L. P. Transportation, Inc.,* 25 Pa. Commonwealth Ct. 412, 359 A.2d 848 (1976); *Dutchland Tours, Inc. v. Pennsylvania Public Utility Commission,*

19 Pa. Commonwealth Ct. 1, 337 A.2d 922 (1975); *see also Reeder v. Pennsylvania Public Utility Commission*, 192 Pa. Superior Ct. 298, 162 A.2d 231 (1960); *Modern Transfer Co. v. Pennsylvania Public Utility Commission*, 179 Pa. Superior Ct. 46, 115 A.2d 887 (1955). The other line of cases, as represented by *Gettysburg Tours*, requires only a showing of *either* the necessity of the proposed service *or* the inadequacy of the existing service. *See, e.g., Pennsylvania Railroad Co. v. Pennsylvania Public Utility Commission*, 199 Pa. Superior Ct. 158, 184 A.2d 111 (1962).

An important distinction, however, exists between these two approaches; namely, those cases (the first line) where the applicant proposes services *identical*[5] to those already existing, and those cases (the second line) in which an applicant proposes a service or services *different* from existing ones. *See Byerly; Gettysburg Tours*. This distinction has dictated that, where the proposed services are different, inadequacy of existing service need not necessarily be established in order to secure a certificate of public convenience. Rather, proof of public necessity for the service alone may support the certificate. *See Gettysburg Tours; Pennsylvania Railroad*. But, where the proposed services are identical[6] to existing services, a showing of

---

[5] In short, inadequacy must be shown when the services are identical.

[6] We note that in *Morgan Drive Away, Inc. v. Pennsylvania Public Utility Commission*, 16 Pa. Commonwealth Ct. 293, 328 A.2d 194 (1974) and *Zurcher v. Pennsylvania Public Utility Commission*, 173 Pa. Superior Ct. 343, 98 A.2d 218 (1953), the proposed services were substantially identical but the "either public necessity *or* inadequacy" approach was nevertheless stated in the dicta. Our examination of these cases reveals that inadequacy *was* established (in contrast to the applicant here) by the applicants in those cases and that the Courts did actually use the "public necessity *and* inadequacy" approach. For example, in *Morgan*, 16 Pa. Commonwealth Ct. at 299, 328 A.2d at 198, this Court in reaching our holding, con-

inadequacy is required. *See Byerly; L. P. Transportation; Reeder; Modern Transfer.*

The PUC in its order here interpreted the "either-or" standard enunciated in *Gettysburg Tours* as doing away with the longstanding proof of inadequacy requirement when improved efficiency could be alleged. Our examination of that case reveals, however, that we did not there hold that a showing of inadequacy of existing services would *never* be required, but rather commented only in the dicta, *in the context of situations where the services are different,*[7] that "no provision exists in the Law, which would require an applicant, in all instances, to prove the . . . inadequacy of those providing existing service. . . ." *Id.* at 402, 400 A.2d at 947.

Here it is clear that the applicant failed to establish the inadequacy[8] of the existing services provided by the protestant from the points in Centre County to the points in Chester County. For instance, the PUC in its order even recognized that the applicant's supporting witness, the traffic manager for the Warner Company, testified that the protestant's service

sidered the inadequacy of existing services in that there was evidence of "delays in affording the service requested by the producers" by the protestant, and that "three producers of [the product testified] that existing service . . . was inadequate and unsatisfactory." *Id.* at 296-97, 328 A.2d at 196.

[7] In *Gettysburg Tours*, the applicant's proposed bus tour differed from the protestant's with respect to routes, luxuries, and historical emphasis. Our holding in that case was "that where . . . an applicant's proposed service is of a different nature than that being presently performed by a protestant, a finding that the present service is inadequate is unnecessary." *Id.* at 403, 400 A.2d at 948.

[8] The PUC in its brief states that "*inadequacy* has clearly been established by [applicant] Davidson." (Emphasis added.) This position, we note, is inconsistent with its corrected order which concluded that, even though there was evidence that the existing services were adequate, inadequacy need not be established if proof of public necessity could be shown.

was "satisfactory" He further testified that such plant "requires a continual and dedicated type supply of fuel" and that the plant could not be "tied to only one trucking operation.'"[9] We observe, however, that he did not, nor did any evidence in the record, establish or even imply that the existing service provided by the protestant was not continual and dedicated, or that the protestant was unable, incapable, or unwilling to provide the services which the plant required.[10]

The issue before us in this case becomes, therefore, whether or not the applicant's proposed service from the points in Centre County to the stated points in

---

[9] The PUC, in its corrected order, in summarizing the traffic manager's testimony, stated that he believed his company needs additional service because no presently certificated carrier is currently authorized to provide service to the Chester County plant from points in Centre *and* Clearfield Counties. Our examination of the record reveals, to the contrary, that such witness testified only that his company needed service from both counties. In *Blake v. Pennsylvania Public Utility Commission*, 42 Pa. Commonwealth Ct. 102, 104, 400 A.2d 244, 245 (1979),

> [the applicant argued] that, since no protestant could *individually* supply all the services for which he has applied, his application must be granted. He [did] not supply us with any statutory or case law to support such a proposition nor do we find any. *It simply is not the law.* (Emphasis added.)

We believe that if the law were to the contrary that all an applicant would have to do in order to secure a certificate would be to apply for authority *broader* than that held by existing carriers and correspondingly maintain that the protestant(s) therefore could not supply all the services which the applicant seeks to provide, *regardless of how adequate the existing service is within the protestant's authority.* Such a result which the applicant and PUC urges here would, we believe, implicitly overrule the longstanding legal requirement for a certificate as enumerated in *Byerly*, and this we refuse to do.

[10] The traffic manager for Warner Company, testifying on behalf of the applicant, stated that if Warner's Chester County plant were to have difficulties in obtaining coal from Centre County that coal could be obtained from Clearfield County.

Chester County was different from the protestant's existing service. If so, then inadequacy need not be shown. *Gettysburg Tours.*

Here our examination of the record leads us to agree with the ALJ and the dissenting member of the PUC that it is obvious that the services which the applicant proposes would be *identical* to those already in existence. We must hold, therefore, that the PUC erred, *Byerly,* in granting the applicant authority to transport coal from points in the townships of Boggs, Burnside, and Snow Shoe, Centre County, to points in the townships of Charlestown and East Whiteland, Chester County. We believe that the applicant failed to carry his burden of proof because the inadequacy of existing services was not established.

### ORDER

AND Now, this 3rd day of May, 1982, the order of the Pennsylvania Public Utility Commission in the above-captioned matter is reversed only insofar as its certificate of public convenience grants the intervenor(s) herein authority to transport coal, as a Class D carrier, for the Half-Way Coal Yard, t/a S&D Trucking Co., from points in the Townships of Boggs, Burnside and Snow Shoe, Centre County, to points in Townships of Charlestown and East Whiteland, Chester County.

IT Is FURTHER ORDERED that the remaining portions of the Commission's order are hereby affirmed.

This decision was reached prior to the resignation of Judge MENCER.

Judge PALLADINO did not participate in the decision in this case.

---

DISSENTING OPINION BY JUDGE ROGERS:
I respectfully dissent.

The majority reverses the Public Utility Commission and holds that Paul E. Davidson failed to establish in support of his application for a certificate of public convenience that the existing service, involving the transportation by truck of coal from specified producers to their consumers, was inadequate. The testimony of Joseph A. Frederick, traffic manager for the Warner Company, a consumer at its Chester County plant of some 50,000 tons annually of coal transported by the petitioner was adduced to prove inadequacy. This testimony is said by the majority to prove the contrary—that the existing service is adequate. I disagree.

In its decision the Commission makes specific reference to this testimony as well as to other testimony of Mr. Frederick with regard to Warner's need to be assured of an uninterrupted supply of coal by the provision of at least one other certificated hauler:

Although [Mr. Frederick] testified that the service of Lansberry has 'generally' been adequate, the situation faced by [Warner] has changed due to the fact that it no longer has the back-up availability of natural gas or oil.[2] Because the company requires 'coal on a continuous basis' to keep its plant in operation, *the applicant's proposed service is necessary to further the service, accommodation and convenience of the public.*[3] [Emphasis supplied.]

Footnotes 2 and 3 shown in the quotation are as follows:

2. Conversion of the Warner Company operations away from the use of natural gas and oil to coal has been encouraged by this Commission.

3. The Commission has the power to authorize competition *where it is necessary to pro-*

*vide adequate service to the public.* (Emphasis supplied.)

Quite simply, the Commission found based on Mr. Frederick's testimony that the petitioner's service is inadequate for the reason that the petitioner is the only carrier performing the service and that Davidson's certification was therefore necessary or proper as a back-up for Warner's vital and continuous need for coal at its plant.

I would affirm the Commission's determination, recalling the narrow limit of judicial review in this class of case:

> The statute invests the Commission with the power to grant a certificate of public convenience when it is satisfied that such action is necessary or proper for the service, accommodation, convenience or safety of the public. Section 1103(a) of the Public Utility Code, 66 Pa. C. S. Section 1103(a). Where the facts support the Commission's finding in a carrier case, we may not make an independent judgment and substitute it for the judgment of the Commission and we may not indulge in the process of weighing evidence. [Citations omitted.] As Mr. Justice Roberts wrote in Philadelphia Suburban Water Co. v. Pennsylvania Public Utility Commission, 425 Pa. 501, 508, 229 A.2d 748 (1967): 'As regards . . . the public interest . . . the Commission's discretion must be accepted unless totally without support in the record based on an error of law or unconstitutional. . . .'

*Lancaster Yellow Cab & Baggage, Inc. v. Pennsylvania Public Utility Commission,* 61 Pa. Commonwealth Ct. 160, 163, 432 A.2d 1143, 1144 (1981).