Mobilfone of Northeastern Pennsylvania, Inc., Petitioner *v.* Pennsylvania Public Utility Commission, Respondent. Hazle-Tone Communication, Inc., Intervenor.

Argued February 2, 1983, before Judges ROGERS, BLATT and CRAIG, sitting as a panel of three.

*Robert E. Yetter, Metzger, Wickersham, Knauss & Erb,* for petitioner.

*Eric A. Rohrbaugh,* Assistant Counsel, with him, *Alfred N. Lowenstein,* Deputy Chief Counsel, and *Joseph J. Malatesta, Jr.,* Chief Counsel, for respondent.

*Sharon R. Bitzel,* for intervenor.

OPINION BY JUDGE CRAIG, April 11, 1983:

Mobilfone of Northeastern Pennsylvania, Inc. appeals an order of the Pennsylvania Public Utility Commission (PUC), adopting the decision of an administrative law judge (ALJ) to grant the application of Hazle-Tone Communication, Inc. for a certificate of public convenience to provide one-way and two-way radio common carrier service[1] to the public within the reliable service area of a transmitter located approximately one mile northeast of the City of Hazleton.

---

[1] The one-way radio common carrier service in this case consists of a paging unit which can be carried by an individual, and when a message is received, the pager indicates that the individual has a message by emitting a beeping tone or a voice message. The individual must then telephone his office. Two-way service permits two-way voice communication by eliminating the need to telephone the individual's office.

Mobilfone, Lehigh Valley Mobile Telephone Co., and Schuylkill Mobilfone, Inc. filed protests to Hazle-Tone's application; Lehigh and Schuylkill subsequently withdrew their protests.[2]

The ALJ held hearings on October 9, November 19 and 20, 1979, January 28, 29, March 26, 27 and May 1, 1980. On May 9, 1980, in a separate application by Hazle-Tone to transfer certificate rights owned by Charles B. Shafer t/a Radio Paging of Northeastern Pennsylvania, the PUC entered an order granting Mobilfone's petition for rehearing, reconsideration and rescission, and remanded that case to the presiding ALJ for further hearings on the issue of Hazle-Tone's financial fitness. Because that May 9, 1980 remand order involved matters relevant to this case, the ALJ also reopened the record in Hazle-Tone's application that is now before us, consolidating the transfer application and this application in one hearing, because the testimony regarding the financial fitness of Hazle-Tone was equally relevant to both applications.[3]

ALJ Cohen issued an initial decision in this certificate of public convenience application, recommending approval of Hazle-Tone's application on April 23, 1981, and on June 19, 1981, Judge Cohen issued his final opinion, again recommending approval of Hazle-

---

[2] Schuylkill withdrew its protest when, after a stipulation agreement by Hazle-Tone and Schuylkill, Hazle-Tone amended its application as follows:

[T]hat [Hazle-Tone] shall not solicit one-way or two-way radio-telephone common carrier subscribers whose business addresses and residence addresses both are located within the service area proposed in the application which overlaps the existing certified service area of Schuylkill Mobile Phone, Inc.

[3] The PUC later approved the transfer application, docketed at A100457, Folder 2, and this court affirmed that decision in *Mobilfone of Northeastern Pennsylvania v. Pennsylvania Public Utility Commission*, 67 Pa. Commonwealth Ct. 219, 446 A.2d 1001 (1982), discussed below.

Tone's application. On August 21, 1981, the PUC adopted that decision, and on September 15, 1981, Mobilfone filed this petition of review.[4]

Under the Public Utility Code, 66 Pa. C. S. §1103, the PUC may grant a certificate of public convenience only if the "granting of such certificate is necessary or proper for the service, accommodation, convenience, or safety of the public," and the applicant bears the burden of demonstrating: (1) a public need for the proposed service, (2) the inadequacy of existing service, and (3) the financial and technical capacity to meet the need in a satisfactory fashion. *Mobilfone of Northeastern Pennsylvania, Inc. v. Pennsylvania Public Utility Commission*, 40 Pa. Commonwealth Ct. 181, 397 A.2d 35 (1979).

Our court, in *Gettysburg Tours, Inc. v. Pennsylvania Public Utility Commission*, 42 Pa. Commonwealth Ct. 399, 400 A.2d 945 (1979), reconciled the split of judicial authority concerning whether an applicant must always show that the existing service is inadequate. We held there that where the proposed service is different than the existing service, the applicant need not establish inadequacy of existing service in order to secure a certificate of public convenience, and that proof of public necessity for the service alone may support the certificate. However, where the proposed service is identical to existing service, a showing of inadequacy is required.

---

[4] Our scope of review of an order of the PUC is limited to a determination of whether or not an error of law has been committed, or whether or not the necessary findings, the determination or the order were supported by substantial evidence. *Makovsky Bros., Inc. v. Pennsylvania Public Utility Commission*, 55 Pa. Commonwealth Ct. 435, 423 A.2d 1089 (1980). Substantial evidence is such relevant evidence as a reasonable mind can accept as adequate to support a conclusion. *Gibbons, Inc. v. Pennsylvania Public Utility Commission*, 18 Pa. Commonwealth Ct. 114, 334 A.2d 806 (1975).

Mobilfone alleges that the PUC should have required Hazle-Tone to prove that the existing service was inadequate. Mobilfone contends that the ALJ, whose final opinion said that Mobilfone did not provide two-way service in the applicant's proposed area, thereby contradicted the finding in his initial opinion that Mobilfone did engage in two-way service in a small portion of Hazle-Tone's proposed area.[5] Mobilfone contends that this discrepancy, and the ALJ's failure to consider that Bell Telephone, although not a protestant, provides two-way service in Hazle-Tone's proposed area, constitutes an error of law.

Hazle-Tone, in its brief, acknowledges that:

The two-way overlap [of Mobilfone's service in Hazle-Tone's proposed service area] is a small ellipse shaped area at the northernmost end of Hazle-Tone contours. The one-way overlap is a small area, again on the northern contour, including a few small towns surrounding the City of Hazleton.

Therefore, assuming that Mobilfone provides both one-way and two-way service in at least a small part of Hazle-Tone's proposed area, and ALJ should have required Hazle-Tone to prove inadequacy of existing service.

However, in determining inadequacy of existing service, Pennsylvania case law is unclear as to whether service provided by a non-protestant should be considered. Hazle-Tone and the PUC assert that our dictum in *Gettysburg* is controlling:

While we believe that the adequacy of existing service is generally one factor to be considered with reference to such a determination, we are satisfied that where as here, an applicant's proposed service is of a different nature than that

---

[5] ALJ's initial opinion, Finding of Fact No. 32.

being presently performed by a *protestant,* a finding that the present service is inadequate is unnecessary. (Emphasis added.)[6]
42 Pa. Commonwealth Ct. at 403, 400 A.2d at 948.

In contrast, however, in *Railway Express Agency, Inc. v. Pennsylvania Public Utility Commission,* 195 Pa. Superior Ct. 394, 401, 171 A.2d 860, 863 (1961), in considering an appeal by one of at least eighty-two carriers in the proposed area, our Superior Court said:

The [PUC] properly concluded that there was a public need for the service proposed that was not being met by [protestant] *or any other existing common carrier.* (Emphasis added.)[7]

In resolving this disparity we are persuaded by the analysis of Judge COHEN, expressed in the final opinion below:

The requirement of proving inadequacy of existing service is not statutory [*see Morgan*

---

[6] Recently, in *Lansberry v. Pennsylvania Public Utility Commission,* 66 Pa. Commonwealth Ct. 381, 444 A.2d 832 (1982), we found that an applicant failed to establish the inadequacy of the existing service provided by the protestant, citing *Gettysburg Tours*:

The issue before us in this case becomes, therefore, whether or not the applicant's proposed service from the points in Centre County to the stated points in Chester County was different from the *protestant's* existing service. If so, then the inadequacy need not be shown. (Emphasis added).

*Id.* at 389-90, 444 A.2d at 836.

[7] Furthermore, our court in *Pennsylvania Public Utility Commission v. Pennsylvania Radio Telephone Corp.,* 20 Pa. Commonwealth Ct. 591, 342 A.2d 489 (1975), said:

As to the alleged inadequacy of services presently provided by [protestant] *and others,* [applicant] relied on evidence which sufficiently demonstrates the failure *of those presently in the field* aggressively to explore the potential for radio-telephone communications services in the area and a limited and incomplete range of services presently provided.

*Id.* at 592, 342 A.2d at 492.

*Drive Away, Inc. v. Pennsylvania Public Utility Commission,* 16 Pa. Commonwealth Ct. 293, 328 A.2d 194 (1974)] but one means, in certain cases, to be used in deciding whether statutory standards will be met. The requirement should be judiciously applied to avoid erecting an artificial non-statutory barrier to entry. The legislature in enacting the Public Utility Code did not intend to benefit established carriers by erecting artificial barriers to the entry of new competitors. It is the public interest and convenience which the law seeks to protect. Pennsylvania P.U.C. v. Purolator Corp., supra, 355 A.2d at 853.

Inadequacy of existing service is a factor indicating public necessity for the proposed service. Pennsylvania Railroad Company v. Pennsylvania P.U.C., 199 Pa. Super. 158, 184 A.2d 111, 115-116 (1962). In certain cases the use of this factor can serve to assure the preservation of the economic health of the public utility industry involved, and has been invoked in those cases where it has not otherwise been established that the proposed service is reasonably necessary for the accommodation or convenience of the public. Application of L. P. Transportation, Inc., 25 Pa. Commonwealth Ct. 412, 359 A.2d 848 (1976). In the present case whether the reason be potential antitrust law violations, lack of interest or corporate economic suitability on the part of Bell to provide the type of service proposed, or for any other reason, Bell has not protested the instant application. When an existing carrier fails to protest an application, there is no reason in public policy or law to require the applicant to demonstrate that the existing service of the non-

protesting carrier is inadequate, since the failure to protest negates the conceivable reasons for use of the inadequacy of existing service factor. For example, if a public utility itself feels no need to protest because it sees no potential harm to its economic position from additional competition, preserving the economic health of the utility industry in the relevant market is not an available basis to support this requirement.

We agree, and we therefore decide that the PUC should have required Hazle-Tone only to establish that the existing one-way and two-way radio communication service of Mobilfone was inadequate. There was no requirement to prove the same regarding Bell or other non-protesting carriers.

Although the PUC did not consider whether Mobilfone's service was inadequate for the population demands of Hazle-Tone's proposed area, we need not remand to the PUC for more findings because the absence of numerous formal findings will not necessarily preclude review. *Philboro Coach Corp. v. Pennsylvania Public Utility Commission,* 67 Pa. Commonwealth Ct. 176, 446 A.2d 725 (1982). Rather, the findings of fact are sufficient for us to review as long as they are detailed and specific enough to enable this court to determine the controverted question presented on the appeal to ensure that the conclusions follow from the facts. In this case, the ALJ's general discussion of this matter contains sufficiently detailed findings to allow us to review its decision; therefore, further remand is unnecessary. *Id.*

In considering the adequacy of service provided by Mobilfone, we note that an applicant need not establish a present demand for his service in every square mile of the territory to be certificated; proof of necessity within the area generally is sufficient. *Reeder v. Penn-*

*sylvania Public Utility Commission,* 192 Pa. Superior Ct. 298, 162 A.2d 231 (1960). *See also Pennsylvania Public Utility Commission v. Purolator Courier Corp.,* 24 Pa. Commonwealth Ct. 301, 355 A.2d 850, 852 (1976). Likewise, the corollary should be true that an applicant need not establish that service is inadequate in every square mile of the proposed territory; proof of inadequacy within the area generally should be sufficient. Because Mobilfone provides one-way and two-way radio service in only a small portion of Hazle-Tone's proposed area, the record supports the conclusion that Mobilfone's service in the proposed area is inadequate.

Mobilfone also challenges the ALJ's reliance on collateral estoppel, which resulted from the consolidation of the certificate of public convenience application and the transfer application for the purpose of conducting a hearing concerning the financial fitness of Hazle-Tone. That hearing involved testimony relative to the financial solvency of Hazle-Tone and its sole shareholder, John P. Gabriale.

By its order of March 13, 1981, the PUC held that Hazle-Tone was financially fit and solvent. Our court affirmed that determination in our recent decision, *Mobilfone of Northeastern Pennsylvania v. Pennsylvania Public Utility Commission,* 67 Pa. Commonwealth Ct. 219, 446 A.2d 1001 (1982) (Hazle-Tone Communication, Inc. was intervenor), where we said:

> Our careful review of the record discloses, however that Hazle-Tone's balance sheet in the auditor's opinion show it to be solvent. Furthermore, Mr. Robert E. Cavalari, a certified public accountant, testified that, based upon his review of Hazle-Tone's financial records, it is in solid financial condition, is extremely liquid, and is adequately capitalized to provide common carrier service.

*Id.* at 223, 446 A.2d at 1003.

The ALJ, in this application proceeding, relied on testimony from the same consolidated hearing, and held, in his final opinion, that the PUC's finding of financial fitness made on March 13, 1981, was applicable to the present case because of the doctrine of collateral estoppel. We agree.

In *McCarthy v. Township of McCandless,* 7 Pa. Commonwealth Ct. 611, 617, 300 A.2d 815, 820-21 (1973), we described the principles of collateral estoppel:

> Where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel in the second action only as to those matters in issue that (1) are identical; (2) were actually litigated; (3) were essential to the judgment (or decree, as the case may be); and (4) were "material" to the adjudication.

Following our reasoning in *Philadelphia Electric Co. v. Pennsylvania Public Utility Commission,* 61 Pa. Commonwealth Ct. 325, 433 A.2d 620 (1980), where we applied res judicata to PUC proceedings,[8] we find that

---

[8] In *Philadelphia Electric,* we said:

We believe that the wisest course to follow is that charged by Professor Davis.

"As a matter of principle, it is completely clear that the reasons behind the doctrine of res judicata as developed in the court system are fully applicable to *some* administrative proceedings. The reasons against a second litigation between the same parties of the same claims or issues are precisely the same for some administrative determinations as they are for most judicial determinations. The sound view is therefore to use the doctrine of res judicata when the reasons for it are present in full force, to modify it when modification is needed and to reject it when the reasons against it outweigh those in its favor."

61 Pa. Commonwealth Ct. at 334, 433 A.2d at 625 (emphasis in original).

collateral estoppel has an appropriate role in PUC hearings.

Mobilfone, however, asserts that the doctrine of collateral estoppel is inapplicable here because the records of both cases were being formed simultaneously. However, there is no reason that an administrative agency should have to relitigate identical issues especially where, as here, different cases were consolidated for a hearing to determine the same issue—that is, the financial fitness of Hazle-Tone. In fact, under the doctrine of collateral estoppel, the PUC would have been precluded from adopting a finding in conflict with their March 13, 1981 order.

Lastly, Mobilfone alleges that the PUC acted arbitrarily in granting Hazle-Tone a certificate for public convenience where Hazle-Tone, a new entrant in the radio carrier service, will use the only available radio frequency in Hazle-Tone's proposed serviceable area. Mobilefone asserts that because too many carriers will be in the market, each company cannot benefit from economics of scale, and, accordingly, the public interest will suffer.[9]

Although we recognize that radio-carrier service differs from other utilities because of the finite limitation on available frequencies, we also recognize that

---

[9] In its brief, Mobilfone contends:

The frequency which Hazle-Tone proposes to use is the last and only frequency available in the Hazle-Tone area. If Hazle-Tone is granted a certificate, it will have only one channel. If and when that channel reaches capacity, Hazle-Tone can no longer grow, expand, or improve service. If Hazle-Tone is granted a certificate, Mobilfone cannot use that frequency except in the Wymart area of its existing certificated territory and cannot grow, expand, or improve services in the Wilkes-Barre area. The combined result is that a limitation is created to block growth, expansion and improvement of services in the entire market area to the ultimate detriment of the public who travels and is gainfully employed in such area.

all utilities involve markets in which only a limited number of providers may enter without adversely affecting each other. Thus, in both situations, we must adhere to the narrow scope of review of PUC orders as expressed in *Reeder:*

> Protestant also contends that the commission substituted for substantial evidence of public necessity and inadequacy of existing service such elements is a desire to further competition. ... *It is for the commission to determine whether the available equipment and facilities are sufficient to meet the public demand; the propriety of permitting competition in a particular field in a specific locality is largely an administrative question to be decided by the commission in the exercise of its discretion.* ... No carrier has a right to be guaranteed freedom from competition. (Emphasis added.)

192 Pa. Superior Ct. at 303, 162 A.2d at 233.

Accordingly, we affirm the decision of the PUC.[10]

---

[10] Mobilfone argues that the PUC erred in approving a ruling by the ALJ which sustained an objection regarding the relevancy of certain testimony. The record indicates that, on January 22, 1980, Schuylkill filed a motion to enlarge the issue regarding fitness. Schuylkill alleged that its president had been threatened by Hazle-Tone with litigation before the Federal Communications Commission and the PUC regarding allegations of unauthorized service. However, the record indicates that the motion to enlarge the issue of fitness was withdrawn with prejudice by Schuylkill on January 29, 1980. Counsel for Schuylkill explained to the presiding ALJ that the motion was based upon a misunderstanding between the parties and was without merit. Mobilfone did not join in the original motion and did not object when it was withdrawn by Schuylkill Valley. Furthermore, the presiding ALJ, as finder of fact, had the discretion to conclude that Mobilfone had waived its right to subsequently raise this issue and also to conclude that the evidence sought to be introduced was inadmissible and irrelevant to the instant proceeding. *See Merz White Ways Tours v. Pennsylvania Public Utility Commission,* 204 Pa. Superior Ct. 43, 201 A.2d 446 (1964).

## ORDER

Now, April 11, 1983, the order of the Pennsylvania Public Utility Commission, dated August 14, 1981, at Application Docket No. A-100457, Folder 3, is affirmed.